**UNITED STATES of America**

v.

**Carolyn Kay POFF.**

**No. SCr. 88–101.**

United States District Court,
N.D. Indiana.
South Bend Division.

Sept. 14, 1989.

Thomas O. Plouff, Asst. U.S. Atty., South Bend, Ind., for the U.S.

David B. Weisman, South Bend, Ind., for Carolyn Kay Poff.

## SENTENCING MEMORANDUM

MILLER, District Judge.

On June 8, 1989, a jury found Carolyn Kay Poff guilty of six counts of threatening the life of the President. 18 U.S.C. § 871. The charges were based on letters she wrote on August 15, 1988, August 22, 1988, and October 3, 1988. Evidence at trial indicated that she disguised her handwriting on some of the letters and used transferred stencil lettering on two of them. Each letter informed the President that he was going to die and she would kill him.

Ms. Poff has a lengthy history of treatment for mental illness. The jury rejected her insanity defense. Following trial, on the defendant's motion, the court ordered a psychiatric evaluation of Ms. Poff pursuant to 18 U.S.C. §§ 4244 and 4247. The ensuing report indicated that while Ms. Poff suffers from recurrent major depression, she is not in need of custody for care and treatment.

Because Ms. Poff committed her offenses after November 1, 1987, the Sentencing Guidelines promulgated by the United States Sentencing Commission govern her sentencing. A presentence report was prepared and submitted to the government and to the defense. No objections have been raised to the report's factual content, though the defense challenges certain readings of law upon which the report is based. Accordingly, the court adopts as its own the factual findings contained in paragraphs 1–61 of the presentence report.

The base offense level for threatening the president is 12. Sentencing Guidelines, § 2A6.1(a). Neither the enhancement for engaging in conduct evincing an intent to carry out the threats, § 2A6.1(b)(1), nor the reduction for a single incident evincing little deliberation, § 2A6.1(b)(2), applies. Because the six counts cannot be grouped together as closely-related counts, *see* § 3D1.2, Application Note 3, Example (7), the offense level is increased by five levels, § 3D1.4, to 17.

No adjustments are appropriate for Ms. Poff's role in the offense, the nature of her

victim, or any obstruction of justice. The parties agree with the probation officer's assessment that she is entitled to a two-level reduction for acceptance of responsibility, § 3E1.1(a), and the court agrees.[1] Her adjusted offense level is 15.

Ms. Poff has been convicted of felonies on four prior occasions:

1. In 1970, she was convicted, after waiving counsel, of a state charge of making a fictitious report of a crime, specifically a bomb threat, and was sentenced to sixty days imprisonment. Because the sentence was completed more than fifteen years before she wrote these threatening letters, no criminal history points are assessed. Sentencing Guidelines, § 4A1.2(e)(1).

2. In 1973, she was convicted, after waiving counsel, of a state charge of making a telephonic threat of an explosion and was sentenced to one to five years imprisonment. She was released from imprisonment in 1975. Because her sentence exceeded thirteen months imprisonment and extended into the fifteen year period preceding commission of these crimes, three criminal history points are assessed. § 4A1.1(a).

3. In 1976, she was convicted of a state charge of fourth degree arson for having set a motel room afire. She was represented by counsel. She was sentenced to one year in prison, followed by two years probation. Because the sentence of imprisonment did not exceed thirteen months and was completed more than ten years before these crimes, no criminal history points are assessed. § 4A1.2(e)(1), (2).

4. In 1978, she was convicted on a federal charge of making threatening communications and was placed on probation. In 1979, a petition to revoke her probation was filed, based on five threatening letters she sent to President Carter. Her probation was reaffirmed and modified in June, 1979, but then was revoked in September, 1979 for her failure to comply with residential requirements of her probation. She was sentenced to five years imprisonment, with credit for time served on probation; she was released from that incarceration in 1980 and completed her parole in 1983. Three criminal history points are assessed for that conviction. §§ 4A1.1(a); 4A1.2(k)(2).

Those six criminal history points would place Ms. Poff in Category III, which, when combined with an adjusted offense level of 15, would produce a guideline sentencing range of twenty-four to thirty months imprisonment. § 5A. The government and the probation officer, however, argue the applicability of § 4B1.1, the career offender provision:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

Threatening the life of the President is punishable by imprisonment for not more than five years. 18 U.S.C. § 871. Accordingly, the table in § 4B1.1 would produce an offense level of 17.[2] Ms. Poff's acceptance of responsibility would not entitle her to a two-level reduction from the offense level set by § 4B1.1. *United States v. Huff*, 873 F.2d 709, 713–714 (3rd Cir.1989). An offense level of 17, coupled with Criminal History Category VI, produces a guideline sentencing range of fifty-one to sixty-three months imprisonment.

1. Section 3E1.1(b) provides that this adjustment may be made without regard to whether the defendant pleaded guilty or was found guilty at trial.

2. A much higher offense level arguably might apply, but for the reasons discussed in note 6, *infra,* the court believes that § 4B1.1 would place Ms. Poff at offense level 17.

Because Ms. Poff is 42 years old, she meets the first qualification for career offender status. The parties dispute whether the offenses of conviction and two or more of her prior offenses of conviction are "crimes of violence". Section 4B1.2(1) directs the reader to 18 U.S.C. § 16 for the definition of the term, "crime of violence":

The term "crime of violence" means—
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Application Notes to § 4B1.2 provide further guidance[3]:

1. "Crime of violence" is defined in 18 U.S.C. § 16 to mean an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felon and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense. The Commission interprets this as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

\* \* \* \* \* \*

4. The provisions of § 4A1.2(e) (Applicable Time Period) ... are applicable to the counting of convictions under § 4B1.1....

Application Note 4 indicates that the court may not consider Ms. Poff's 1970 and 1976 convictions in determining her career offender status; those convictions fall outside the time periods established by § 4A1.2(e). To deem Ms. Poff a career offender for purposes of § 4B1.1, then, the court must find that each of her remaining offenses were crimes of violence as defined by 18 U.S.C. § 16, and as interpreted by the Sentencing Commission.

18 U.S.C. § 16(a) directs the inquiry to the elements of the crime. Each of the relevant statutes requires the threatened use of physical force against another's person or property. 18 U.S.C. § 871(a), which gives rise to the instant conviction for threatening the President's life, provides:

Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter ... containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States ...

18 U.S.C. § 876, which gave rise to the 1979 federal conviction for threatening communications[4], provides:

Whoever knowingly deposits in any post office or authorized depository for mail matter ... any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the person of the addressee or another ...

Ms. Poff's 1973 state conviction for making

---

3. The Guidelines' application notes are useful, but not binding, in interpreting guidelines. *United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989).

4. Ms. Poff was not convicted of writing threatening letters to the President in 1978 or 1979. She was convicted of writing threatening letters to a county prosecuting attorney. The letters to President Carter gave rise to the revocation of Ms. Poff's probation.

a telephonic threat of an explosion [5] arose under IND.CODE 35–30–9–2 (repealed October 1, 1977), which provided:

> Whoever telephones another person and threatens to create an explosion, or falsely informs that some other person threatens or intends to create an explosion, in any private or public building ... shall be guilty of a felony ...

Each of Ms. Poff's pertinent crimes of conviction had "as an element the ... threatened use of physical force against the person or property of another". That she apparently intended to carry out none of the threats has no place in the analysis under 18 U.S.C. § 16(a), which focuses exclusively on the element of the crime. Ms. Poff argues that a "crime of violence" must involve something more than bizarre threats that were never intended to be carried out, but the court cannot so read 18 U.S.C. § 16(a). Rightly or wrongly, Congress included offenses that require the threatened use of force, and the court must apply that definition.

Accordingly, the court concludes that each of Ms. Poff's pertinent crimes of conviction is a "crime of violence" under 18 U.S.C. § 16(a). Ms. Poff is a career offender under § 4B1.1 of the Sentencing Guidelines; her offense level is 17 and her Criminal History Category is VI. She faces a guideline sentencing range of fifty-one to sixty-three months imprisonment, Sentencing Guidelines, § 5A, and a term of supervised release of at least two, but not more than three, years. §§ 5D3.1, 5D3.2(b)(2).

■ Ms. Poff argues that the court should depart from the guideline range pursuant to the policy statement found at § 5K2.13 of the Guidelines, which provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided

that the defendant's criminal history does not indicate a need for incarceration to protect the public.

The record contains evidence that Ms. Poff's mental condition contributed to the offenses. A clinical psychologist reports that Ms. Poff wrote threatening letters to President Reagan to get attention from authorities; Dr. Francis Engel testified at trial that Ms. Poff told him that was her purpose, as well. Ms. Poff testified at trial, and told her treating psychiatrist, that she wrote the letters because her deceased father told her to do so. Considerable medical and psychiatric material in the record indicates that Ms. Poff's mental condition stems from sexual abuse by her father.

Ms. Poff clearly is a woman with substantial mental difficulties. Those difficulties have not been disabling; she has managed to come within a few hours of a college degree in criminology, largely with high grades. Her post-trial psychiatric evaluation produced the following summary:

> Ms. Poff appears to be undergoing a recurrent major depression. This depressive disorder can be dealt with through medication and psychotherapy in a prison environment as well as in a proper community environment. When maintained on psychotropic medication such as Lithium and Elavil Ms. Poff demonstrates she is quite rational, coherent and oriented. She also indicates what appears to be a genuine interest in psychotherapy treatment issues. In the event she is placed in a prison environment it is this examiner's opinion she could fare well in the general population. There does not appear to be a need to place her on an inpatient psychiatric unit, whether it be in a federal correctional institution or in the community. In any event, it appears Ms. Poff would benefit from a setting which has among its staff individuals who are experienced in dealing with individuals who are adult survivors of child-

---

**5.** State convictions arising prior to the effective date of the Sentencing Guidelines may be considered in determining career offender status.

*United States v. Sanchez–Lopez,* 879 F.2d 541, 560 (9th Cir.1989).

hood sexual abuse. Psychotherapists with this type of training can be found both in the prison environment, for example, at FCI–Lexington, and also can be found in the community.

Nevertheless, the court believes that departure would be improper under § 5K2.13 because that policy statement is inapplicable by its own terms. Section 5K2.13 speaks of "a non-violent offense". As discussed above, the offense of threatening the life of the President is a crime of violence within the meaning of the Sentencing Guidelines; it does not appear that the Sentencing Commission intended "non-violent" offenses within the meaning of § 5K2.13 to encompass crimes "of violence" within the meaning of §§ 4B1.1 and 4B1.2.

Further, Ms. Poff's long history of activity similar to that for which she was convicted strongly suggests that incarceration may be necessary to protect the public. The court gives little weight to this consideration, however, in recognition that she can write threatening letters, if inclined to do so, from within prison as well as from without.

The court also notes that the career offender status and guideline range were determined without reference to the threatening letters Ms. Poff wrote to President Carter in 1979, which led to the revocation of her federal probation. That additional criminal history, so similar to the offenses for which she is being sentenced, counsel against a downward departure.

Finally, § 4B1.1 was the Sentencing Commission's attempt to implement the statutory directive to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" when a defendant meets the definition of a career offender. 28 U.S.C. § 994(h). Even a maximum sentence within Ms. Poff's guideline range (sixty-three months) would not approach the maximum term to which she could be imprisoned were it not for the Guidelines. Her six counts of offenses punishable by five years imprisonment would expose her to a term of thirty years, or 360 months.[6] The court does not view the statutory directive as prohibiting a departure; the discretion to depart exists in recognition that unusual cases demand different treatment. See Sentencing Guidelines, Chapter 1, Part A, at 1.6–1.7. Congressional intent is pertinent, however, in determining whether to exercise the discretion to depart below the guideline range.

Accordingly, the court declines to depart from the applicable guideline range under § 5K2.13.

■ The Guidelines would not appear to warrant a downward departure due to Ms. Poff's mental condition, other than under § 5K2.13. A sentencing court may depart from the Guidelines if it finds an aggravating or mitigating consideration not adequately considered by the Sentencing Commission. 18 U.S.C. § 3553(b). The Commission appears to have considered mental condition as a mitigating factor:

**6.** This discrepancy may be due to misapplication of § 4B1.1. The Guidelines provide no definition of the term "Offense Statutory Maximum" found in the career offender table. The term becomes ambiguous in a multiple-count situation such as that of Ms. Poff. The presentence report assumed, and the parties have not disputed, that Ms. Poff's "Offense Statutory Maximum" is five years (the maximum for one violation of 18 U.S.C. § 871) rather than thirty years (the maximum for six violations). Were the alternate approach taken, and thirty years viewed as the "Offense Statutory Maximum", the career offender table in § 4B1.1 would mandate an offense level of 34, producing a guideline range of 262–327 months.

The court assumes, without holding, that proper application of the career offender table

requires use of the five-year maximum. First, the government has not argued for any higher offense level. Second, the few courts to confront such situations have adopted this approach without discussion. See United States v. Alves, 873 F.2d 495 (1st Cir.1989); United States v. Lawrence, 708 F.Supp. 461 (D.P.R.1989). Third, ambiguities in penal statutes generally are to be resolved in favor of leniency.

It should be noted that proposed amendments to the Guidelines, which would become effective on November 1, 1989, would resolve this issue through a new application note to § 4B1.1, providing: "If more than one count of conviction is a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that authorizes the greatest maximum term of imprisonment."

Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions in Chapter Five. Mental and emotional conditions, whether mitigating or aggravating, may be relevant in determining the length and conditions of probation or supervised release.

Sentencing Guidelines, § 5H1.3. Even if § 5K2.13 does not provide the exclusive basis for departure based on mental condition, however, the court would decline to depart for the reasons discussed with reference to § 5K2.13. The court will select a sentence within the guideline range.

Because Ms. Poff apparently had no intention of carrying out the threats she made to the President (and, indeed, apparently had no intention of carrying out the threats she made in the cases that make her a career offender), the court deems it appropriate to impose a sentence at the low end of the guideline range, or fifty-one months. In light of her history of mental problems, the court believes the maximum period of supervised release, or three years, is appropriate, with special conditions that she possess no firearms and that she participate in mental health counselling. Because Ms. Poff's mental condition impairs her ability to work and she subsists on public benefits, the court believes that an order of community service as part of her supervised release should be entered in lieu of a fine.

Accordingly, the court now adjudges that pursuant to the Sentencing Reform Act of 1984, the defendant, Carolyn Kay Poff, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of fifty-one (51) months on each of the six counts, with the sentences to be served concurrently with each other. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three (3) years. While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in § 5B1.4(a) of the Sentencing Guidelines, shall not possess a firearm or other dangerous weapon, shall perform ten hours of community service each month as arranged by the United States Probation Office, and shall participate in a mental health program approved by the United States Probation Office.

The court recommends that the Bureau of Prisons designate the Federal Correctional Institution at Lexington, Kentucky to be the place of service of this sentence.

Because the defendant is unable to pay a fine, no fine is imposed. Sentencing Guidelines, § 5E4.2(d)(2), (3). It is further ordered that the defendant shall pay to the United States a special assessment of $50.00 on each count, or $300.00, which shall be due immediately.

Without objection from the government, the court finds, by clear and convincing evidence, that the defendant poses no risk of flight or danger to the community or any person and affords the defendant the privilege of voluntary surrender. Accordingly, the defendant is ordered to surrender herself to the institution designated by Bureau of Prisons before noon on October 12, 1989.

The court orders the presentence report, exclusive of any recommendation, sealed and made a part of the record herein in the event of any appellate review.

SO ORDERED.