16 F.3d 412
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Brian Karl BUTT, Defendant-Appellant.
 No. 92-5701.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 29, 1993.
Decided Jan. 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-92-43-1-A)
 William Benjamin Moffitt, Moffitt, Zwerling & Kemler, P.C., Alexandria, VA, for appellant.
 David Glenn Barger, Asst. U.S. Atty., Alexandria, VA, for appellee.
 John Kenneth Zwerling, Lisa Bondareff Kemler, Kyle W. O'Dowd, Moffitt, Zwerling & Kemler, P.C., Alexandria, VA, for appellant.
 Richard Cullen, U.S. Atty., Michele A. Horn, Sp. Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 After a jury trial, Brian Karl Butt was convicted of interference with flight crew members, in violation of 49 U.S.C.Sec. 1472(j), and simple assault aboard an aircraft, in violation of 49 U.S.C. Sec. 1472(k)(1) and 18 U.S.C. Sec. 113(e). On this appeal, he challenges his conviction and sentence. We conclude that the alleged errors at trial and in sentencing raised by Butt are without merit and affirm his conviction and the district court's sentence.
 
 
 2
 * On the evening of January 11, 1992, at approximately 10:00 p.m., Butt boarded United Airlines "red eye" Flight 102 in Los Angeles, destined to arrive in Washington, D.C., some five hours later. Butt appeared to be sober upon boarding, but soon took action to alter that condition. When the flight crew began serving drinks, he ordered "all the Bacardi on the cart" and three light beers. Becoming loud and boisterous, Butt started kicking the back of the seat in front of him and threatening to cause physical harm to one Alfred Bryan, whose misfortune it was to be seated there. Butt promised to "whack" Bryan and said he would use a knife rather than a gun because he wanted to see the blood and the look of pain in his victim's eyes. Butt, a caucasian, made racial slurs against Bryan, an African-American, stating that "it's people like you who don't give me any respect." Butt's behavior toward Bryan continued intermittently until Butt passed out or fell asleep shortly before the flight arrived at Dulles International Airport.
 
 
 3
 Jennifer Bosworth, the flight attendant who had originally served alcoholic beverages to Butt, attributed his disruptive behavior to his drinking and decided to cut him off from further alcohol, communicating her decision to the rest of the flight crew. Butt responded by leaving his seat, walking toward the lavatory and rear galley of the airplane and telling flight attendant Stephanie Sinnott that he would tear the plane apart unless she sold him three more beers. Sinnott sold the three beers to Butt conditioned upon his good behavior, whereupon Butt became friendly and gave Sinnott an uninvited kiss. During this encounter with Sinnott, Butt pulled aside his shirt, displaying tattoos of two bullet holes and of skulls with blood dripping in the front and back. Butt also showed Bosworth the bullet hole tattoos, threatened once again to tear the plane apart, and told Bosworth that he had killed the last two people who tried to tell him what to do.
 
 
 4
 When flight attendant Michael Turner attempted to calm Butt down, Butt showed Turner a tattoo which he identified as a "death call" and told Turner he was a "dead man." Turner then informed Captain John Lane, the airplane's pilot, of Butt's behavior. Lane held a conference in the cockpit with the flight's crew and resolved to have the plane met by law enforcement officers upon its arrival at Dulles International. By this time, Butt had passed out or fallen asleep and Lane made a softer than usual landing so as not to awaken him. Law enforcement agents met the plane at Dulles and took Butt into custody.
 
 
 5
 At trial, Butt introduced evidence that he suffers from brain damage sustained at birth which was aggravated by a series of head injuries and by chronic substance abuse problems, including excessive use of alcohol. Testimony at trial was offered to show that the events leading up to Butt's arrest were produced by a confluence of his neuropsychological impairment and the ingestion of alcohol.
 
 II
 
 6
 As his first assignment of error, Butt contends that the trial court improperly limited his cross-examination of two members of the flight crew who testified as government witnesses. Defense counsel, who based Butt's defense in part on the contention that he was intoxicated, sought to cross-examine these witnesses, Captain Lane and Flight Attendant Bosworth, using United Airlines' "Flight Attendant In-Flight Handbook." This cross-examination was offered to establish that the airline employees had a bias or personal interest in their testimony, causing them to minimize the extent and impact of Butt's drinking, since it would have been a violation of the airline's policy to serve alcohol to an individual whom they knew to be drunk. The district court sustained an objection to this line of questioning, excluding it under Rule 403 of the Federal Rules of Evidence.
 
 
 7
 The Confrontation Clause of the Sixth Amendment does not require a trial court to permit unfettered cross-examination. Judges retain wide latitude to impose reasonable limits. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). While the appellant attempted to cross-examine Flight Attendant Bosworth and Captain Lane on this point, other United Airlines witnesses, whose testimony was cumulative and corroborative of Bosworth and Lane, were not so cross-examined. Even if the jury had disregarded the testimony of Bosworth and Lane, there was ample evidence to convict. Furthermore, appellant had more than sufficient opportunity to develop the defense that Butt was intoxicated. Therefore, if any error occurred in limiting the cross-examination of Bosworth and Lane, such error was harmless. In Caskins v. McKellar, 916 F.2d 941, 950 (4th Cir.1990), cert. denied, 111 S.Ct. 2277 (1991), the court held that overwhelming evidence of defendant's guilt, coupled with ample opportunity to otherwise impeach a witness's credibility, renders any abuse of the court's discretion to limit cross-examination harmless.
 
 III
 
 8
 Butt next contends that the trial court erred in failing to explain the defendant's burden to establish the insanity defense by clear and convincing evidence in relation to the instructions on reasonable doubt. While he concedes that the instructions as given were legally correct, Butt argues that, in light of the fact that the jury sent a note requesting clarification on the appropriate standard to be applied to the insanity defense, it was error not to respond by defining "clear and convincing evidence" and clarifying whether this was a higher or lower standard than reasonable doubt.
 
 
 9
 This court has held that it is preferable for a trial court not to attempt to define burdens of proof, specifically the reasonable doubt standard, unless the jury asks for such a definition. United States v. Love, 767 F.2d 1052, 1060 (4th Cir.1985), cert. denied, 474 U.S. 1081 (1986); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir.1988). Such terms should ordinarily be left to their "self-evident meaning comprehensible to the lay juror." United States v. Adkins, 937 F.2d 947, 950 (4th Cir.1991). In accordance with established case law the trial court indicated it would define "clear and convincing" if the jury asked it to; the jury did not. A similar situation arose in United States v. Still, 857 F.2d 671 (9th Cir.1988), cert. denied, 489 U.S. 1060 (1989), in which the United States Court of Appeals for the Ninth Circuit held there was no plain error in not defining the clear and convincing standard for an insanity defense where the court follows model federal jury instructions.
 
 IV
 
 10
 At the close of the government's case, Butt moved for a judgment of acquittal on the ground that the evidence established he had consumed eight rums and six or seven beers during the flight and was intoxicated. The trial court denied the motion and submitted the issue to the jury under proper instructions on the defense of intoxication. Later, at sentencing, the court denied Butt's motion for a downward departure under U.S.S.G. Sec. 5K2.13 at least in part "because of his intoxication." Butt points out this apparent inconsistency and contends that it demonstrates the court's ruling on the motion for judgment of acquittal was erroneous. We disagree.
 
 
 11
 The standard for a trial court's ruling upon a motion for judgment of acquittal was set forth by this court in United States v. MacClosky, 682 F.2d 468, 473 (4th Cir.1982), as follows: "The test for deciding a motion for judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt."
 
 
 12
 Although there was evidence that Butt had consumed a significant amount of rum and beer, there was also evidence that he appeared to be in control of his faculties. The court properly left this issue to the jury, instructing it that intoxication, while not a legal excuse for commission of a crime, may negate the existence of specific intent.
 
 
 13
 The trial court's later consideration at sentencing of the impact of Butt's drinking is an entirely different matter than the motion for judgment of acquittal. At sentencing, the judge becomes the trier of contested issues of fact under a different standard of proof. Due to the different standards to be applied, the perceived inconsistency pointed out by Butt is more apparent than real. At trial, the question of Butt's intoxication was a contested issue of fact which the trial court properly left to the jury.
 
 V
 
 14
 Appellant Butt's remaining assignments of error all relate to his sentencing. Basically, he attacks his sentencing as a career offender. He makes the following arguments: (1) The crime charged is not a "crime of violence" as required for career offender enhancement. (2) The district court erred in holding that it did not have authority to depart downward under U.S.S.G. Sec. 5K2.13 (diminished capacity) because Butt was intoxicated at the time of the offense. (3) Career offender status overstates the seriousness of Butt's past conduct and of the present offense and the likelihood of recidivism; a downward departure was therefore required. (4) The sentence imposed constitutes cruel and unusual punishment under the Eighth Amendment because the fourteen-year term imposed is grossly disproportionate to the nature of the offense. We find no merit to any of these arguments.
 
 
 15
 This court has held that, in determining whether an offense is a crime of violence within U.S.S.G. Sec. 4B1.2, the court should look to the description of the crime charged and not to the underlying facts of the specific offense. United States v. Johnson, 953 F.2d 110, 113 (4th Cir.1991); United States v. Wilson, 951 F.2d 586, 588 (4th Cir.); cert. denied, 112 S.Ct. 2294 (1992). Section 4B1.2 defines a crime of violence as:
 
 
 16
 ... [A]ny offense under federal or state law punishable by imprisonment for a term exceeding one year that--
 
 
 17
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) ... involves conduct that presents a serious risk of physical injury to another.
 
 
 18
 Count I of the indictment charges that Butt "did unlawfully, willfully and knowingly assault, intimidate and threaten flight crew members and flight attendants aboard Flight 102...." Instructions given to the jury defined "assault" as "a deliberate attempt to inflict bodily harm or injury upon the person of another." As this instruction demonstrates, assault by its very definition comes within the ambit of a crime of violence under U.S.S.G. Sec. 4B1.2.
 
 
 19
 Additionally, courts have held threats to be crimes of violence under Sec. 4B1.2. In United States v. McCaleb, 908 F.2d 176 (7th Cir.1990), the court held that a letter containing a threat on the life of the President was a crime of violence.[1] In United States v. Poff, 723 F.Supp. 79 (N.D. Ind.1989), aff'd, 926 F.2d 588 (7th Cir.), cert. denied, 112 S.Ct. 96 (1991), the court concluded that the defendant's prior convictions for making a telephonic threat of an explosion and for sending threatening communications were crimes of violence since each involved a threat of physical force against the person or property of another. The court also held that whether or not the defendant actually intended to carry out the threat was irrelevant. 723 F.Supp. at 83.
 
 
 20
 The district court therefore correctly concluded that Butt's conviction under Count I of the indictment constituted a crime of violence under U.S.S.G. Sec. 4B1.2.
 
 
 21
 Similarly, we find no error in the court's refusal to depart downward for diminished capacity under U.S.S.G. Sec. 5K2.13. Among the reasons the court gave for refusing to depart underSec. 5K2.13 was its conclusion that incarceration was necessary to protect the public. J.A. at 772. Under the express terms of Sec. 5K2.13, downward departure is inappropriate if the defendant's criminal history indicates a need for incarceration to protect the public.[2]
 
 
 22
 Relying on United States v. Adkins, 937 F.2d 947 (4th Cir.1991), Butt next contends that a downward departure was warranted under U.S.S.G. Sec. 4A1.3 for the reason that his criminal history category significantly over-represents the seriousness of his criminal history and the likelihood that he will commit further crimes. In Adkins, this court held that "in an atypical case" a district court may depart downward "where career offender status overstates the seriousness of the defendant's past conduct." Id. at 952.
 
 
 23
 The district court apparently concluded that this is not such a case and declined to depart downward. This court has held on several occasions that a trial court's exercise of its discretion to decline to depart from the guidelines is not reviewable on appeal. United States v. Underwood, 970 F.2d 1336, 1338 (4th Cir.1992); United States v. Osborne, 935 F.2d 32, 35 n. 3 (4th Cir.1991); United States v. Ghannam, 899 F.2d 327, 328 (4th Cir.1990).[3] Lastly, Butt contends that the sentence imposed violates the Eighth Amendment's prohibition against cruel and unusual punishment because the fourteen-year term of imprisonment is grossly disproportionate to the nature of the offense. This argument is answered by the decision of the Supreme Court of the United States in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), which upheld a term of life imprisonment for marijuana possession by a defendant with no prior felony convictions. "Severe, mandatory penalties may be cruel," the Court ruled, "but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." Id. at 2701. The guidelines themselves were held by the Supreme Court not to violate the Constitution in Mistretta v. United States, 488 U.S. 361 (1989). Butt's sentence was imposed under the career offender provisions of the United States Sentencing Guidelines which have, likewise, been held constitutional. United States v. Gordon, 953 F.2d 1106, 1107 (8th Cir.), cert. denied, 113 S.Ct. 170 (1992).
 
 
 24
 Having, for all these reasons, found no merit in Butt's assignments of error, we affirm his conviction and sentence as imposed by the district court.
 
 AFFIRMED
 
 
 [1]
 While the McCaleb court interpreted the definition of a "crime of violence" set forth in 18 U.S.C. Sec. 16, the express language of 18 U.S.C. Sec. 16 has been incorporated into U.S.S.G. Sec. 4B1.2
 
 
 [2]
 We are aware of the split of authority on whether the terms "nonviolent offense" under Sec. 5K2.13 of the guidelines and "crime of violence" under Sec. 4B1.2 should be viewed as mutually exclusive. See United States v. Chatman, 986 F.2d 1446, 1450 (D.C.Cir.1993); United States v. Russell, 917 F.2d 512, 517 (11th Cir.1990), cert. denied, 111 S.Ct. 1427 (1991); United States v. Poff, 926 F.2d 588, 591 (7th Cir.) (en banc), cert. denied, 112 S.Ct. 96 (1991); United States v. Rosen, 896 F.2d 789, 791 (3d Cir.1990); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir.1989), cert. denied, 112 S.Ct. 233 (1991); United States v. Borrayo, 898 F.2d 91, 94 (9th Cir.1989). In light of the trial court's determination that defendant's criminal history indicated a need for incarceration to protect the public, it is unnecessary to consider whether our conclusion that Butt was convicted of a crime of violence under Sec. 4B1.2, renders Sec. 5K2.13, which applies only to "non-violent" offenses, inapplicable
 
 
 [3]
 By contrast, where a district court refuses to depart from the guidelines because it believes it lacks authority to do so, its decision is subject to appellate review. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990). That is not the case here. The trial court made clear that it knew it had the authority to depart downward; it simply exercised its discretion not to do so