UNITED STATES of America,
Plaintiff–Appellee,

v.

Lisa WILSON, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary Ray RIGNEY, a/k/a Gary Russ,
Defendant–Appellant.

Nos. 88–5215, 88–5216.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1989.

Decided Feb. 21, 1990.

John A. Dusenbury, Jr. (Smith, Patterson, Follin, Curtis, James & Harkavy, Asheville, N.C., on brief), Charles Allen Lloyd, Greensboro, N.C., for defendants-appellants.

David Bernard Smith, Asst. U.S. Atty. (Robert H. Edmunds, Jr., U.S. Atty., on brief), Greensboro, N.C., for plaintiff-appellee.

Before POWELL, Associate Justice, United States Supreme Court, Retired, sitting by designation, and WIDENER and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

Gary Ray Rigney pleaded guilty to charges of conspiring to distribute cocaine and possessing a firearm during an attempt to acquire cocaine. He was sentenced under the Sentencing Reform Act to a total of 138 months in prison and six years of supervised release. Lisa Wilson pleaded guilty to a charge of interstate travel in aid of an unlawful business involving controlled substances and was sentenced to 24 months in prison, followed by 24 months of supervised release.

Both defendants appeal, challenging the correctness of their sentences under the Sentencing Guidelines.[1] We affirm in Rigney's case but require resentencing for Miss Wilson.

We first consider Rigney's appeal. The dispute between Rigney and the government centers on the quantity of cocaine involved. The pre-sentence report stated that Rigney was responsible for 21 kilograms of cocaine. Pursuant to § 6A1.2 of the Sentencing Guidelines, Rigney objected to the pre-sentence report and asserted responsibility for no more than 10 kilograms of cocaine, and the government adopted the pre-sentence report. None of the drug transactions described in the pre-sentence report occurred in August 1987. At the sentencing hearing, Rigney admitted on direct examination responsibility for 13 kilograms of cocaine, including a 2 kilogram purchase in August 1987 made in Virginia. On cross examination, Rigney admitted to an additional purchase of 2 kilograms in August 1987 in Florida. On redirect examination, Rigney recanted his testimony on direct examination about the August purchase in Virginia. The district court credited Rigney's testimony on direct and cross examinations, and found an involvement with a minimum of 15 kilograms.[2]

Rigney argues that it is error for the district court to rely on Rigney's admission of two deliveries in August, when the pre-sentence report did not report the August deliveries and the government made no objection to the report. Rigney relies on § 6A1.2 of the Guidelines, which requires each party, upon receipt of the pre-sentence report, to file a written statement of the sentencing factors to be relied on at sentencing. Section 6A1.2 allows either side to assert sentencing factors not in the pre-sentence report if written notice is filed with the court within a reasonable time before sentencing. Alternatively, the section allows a party to adopt the pre-sentence report. In this case, the government adopted the findings of the pre-sentence report. Rigney argues that once the government accepted the pre-sentence re-

1. Rigney and Miss Wilson both pleaded guilty to the crimes pursuant to plea agreements and do not challenge the validity of their convictions.

2. The district court also stated its belief that Rigney might well be held responsible for involvement with 2 additional kilograms in April 1987 and 3 additional kilograms in January 1988, which Rigney denied. Such an alternative holding would bring the total up to 20 kilograms.

port, it was prevented from using sentencing factors not included in the report and that the August 1987 drug transaction, standing alone, is a sentencing factor. We do not agree. The sentencing factor at issue here is the overall amount of cocaine involved in the offenses for which Rigney was responsible.[3] The amount is what fixes the base offense level under § 2D1.1 of the Guidelines. Once any factor is in dispute, under § 6A1.3, both parties are to be given adequate opportunity to present information regarding that factor. Rigney put the amount of cocaine involved in dispute by challenging the conclusion of the pre-sentence report that 21 kilograms of cocaine were involved. At that point, both the government and Rigney were free to present to the district court information concerning the amount of cocaine involved.[4] § 6A1.3. We, therefore, see no error in the district court considering all the evidence before it regarding the amount of cocaine involved. Its finding was certainly not clearly erroneous.

We next consider Miss Wilson's appeal. She was Rigney's girlfriend, and her involvement in the conspiracy was limited. In November 1987, she made a round trip from Danville, Virginia, to Greensboro, North Carolina, to pick up John William Houk, the group's drug supplier. Her November trip is the basis of the interstate travel count to which she pleaded guilty. Miss Wilson had no prior criminal record. During her pre-trial release, she had joined Narcotics Anonymous and Alcoholics Anonymous. She participated in a drug abuse program in which she submitted herself to weekly drug screening tests, and she remained drug free. She had been regularly employed throughout the pre-trial release period, and she enrolled in an educational program to work toward an equivalency diploma. The district court found her base offense level to be thirty-four.[5] It reduced the level four points because she was a minimal participant and two points for accepting responsibility, bringing the level to twenty-eight. Additionally, the government made a motion pursuant to 18 U.S.C. § 3553(e) that the district court depart downward because of her substantial assistance. At a base offense level of twenty-eight, the relevant Guidelines range is 78 to 97 months. However, the statutory maximum for a violation of 18 U.S.C. § 1952(a)(3), the crime to which she pleaded guilty, was 60 months. The district court departed downward and sentenced her to 24 months' imprisonment and 24 months of supervised release.

In sentencing Miss Wilson, the district court made several statements that she argues show that it thought its ability to depart was limited.[6] While the remarks of

3. Absent a definition of "factor" in the Guidelines themselves, we turn to the ordinary meaning of the word. A factor is "something that contributes to the production of a result." Webster's 3rd International Dictionary, 1971. Under the Guidelines, the overall amount of drugs involved determines the "base offense level." Under the Drug Quantity Table, § 2D1.1 of the Guidelines, responsibility for between 5 and 14.9 kilograms of cocaine results in a base level of thirty-two, and responsibility for between 15 and 49.9 kilograms results in a base level of thirty-four. The number of drug transactions, however, does not directly impact on the sentence. One transaction involving 50 kilograms would result in the same base level as ten transactions involving 5 kilograms. We, therefore, reject the argument that every specific allegation of a particular drug transaction in a pre-sentence report is a factor in the sentencing. The factor the district court was considering was the overall quantity of drugs. The various drug transactions were merely the factual predicates which allowed the district court to make a factual finding as to the overall quantity of drugs involved.

4. We note that, in this case, the government did not call a witness or put on evidence in an attempt to establish the cocaine deliveries in August. Rigney himself testified to it.

5. Thirty-four was based on the amount of cocaine involved in the conspiracy and was the same base level as that of Rigney. Miss Wilson does not appeal the district court's finding as to the base offense level.

6. The court said:
Now she had been convicted in the original indictment, even the lower end of the guidelines would have been six and a half years, it would appear, Mr. Dusenbury. So now she has—by pleading to the information which you negotiated for her, has received some, of course, substantial benefit in that it even lowers the lower end of the guidelines from six

the district court are not altogether clear as to whether or not it thought its discretion as to the amount of departure from the Guidelines sentence was limited, in this criminal case we are bound by the rule of leniency and must construe its remarks favorably to the defendant. That is to say, we consider the remarks of the district court to be a construction by it of the sentencing statutes which would have forbidden such a departure from the Guidelines on its part so as to simply place the defendant on probation.

■ In this, the district court erred. The government made its motion under 18 U.S.C. § 3553(e) to impose a sentence below a level established by statute so as to reflect the defendant's substantial assistance in the investigation or prosecution of others. Under the literal terms of that statute, there is no lower limit placed on the court's authority, and no straining of the statute is necessary to arrive at that conclusion. The provision of § 3553(e) that "such sentence shall be imposed in accordance with the Guidelines and Policy Statements issued by the Sentencing Commission ..." does not have any effect on the court's authority to impose merely a probationary sentence, should it be so advised, for the Sentencing Commission has not placed any limit on the amount of a sen-

tence a district court may impose under § 3553(e). Should the government take issue with the amount of downward departure from the Guidelines, it may appeal, in which event the question on appeal is whether or not the sentence imposed by the district court was reasonable. 18 U.S.C. § 3742(e). So the limit of the district court's discretion is the question of whether or not the sentence imposed was reasonable, not the limit of a finite term to be imposed.

Our literal reading of the statute is supported by the Sentencing Guidelines, Part K. Under "Substantial Assistance to Authorities," § 5K1.1, there is no indication of any limit on the district court's authority to depart from the Guidelines. Indeed, that section explicitly provides for an "appropriate reduction" which shall be determined by the court for reasons stated, which may include, but are not limited to, the significance of the assistance, the truthfulness and reliability of the information, the nature and extent of the assistance, the injury suffered or risk of injury or danger to the defendant, and the timeliness of the assistance. The Application Notes to that section contain nothing of significance except the explicit direction that "the sentencing reduction for assistance to authorities

and a half years to a maximum statutory amount of five years. And the court, of course, can consider all of the factors that you mentioned, and the government has filed a pleading with the court concerning the defendant's cooperation in this case. But the guidelines have been adopted by the Congress without any input from this Judge, in any event, although maybe we all have a chance to comment on them at some point. But Congress says that under the factual scenario that the minimum is six and a half years, and the plea bargain gets it down to a maximum of five. And even with cooperation, do we really go all the way down to zero time on something like this, Mr. Dusenbury? Isn't that just a complete disregard of Congress's intention in these cases.

. . . .

Well, don't the guidelines take into consideration, is that I'm saying—I agree that Congress says you can depart some. But are they giving judges the authority to depart that much, going from 28 to—what is it Mr. Stillman, does it have to be for no time at all.... A twenty-two level departure....

Well, I don't know what I would have done before the guidelines were enacted. But the point I'm just bringing to your attention—I'm not saying I'm going to follow the guidelines specifically on this, but I mean what Senator Kennedy and Senator Thurmond remarkably agreed with each other was that the court should stop doing what it had been doing in the past and sentence—use these guidelines for sentencing purposes. And a departure from them—certainly I'm willing to depart, but I mean—I don't know. I'm going to talk to the probation officer, certainly, before imposing sentence in this case. But as Mr. Stillman has said, we're talking about going from twenty-eight to six, a twenty-two level departure at that point, in addition to the four levels for the adjustment in the minimum role in it. I know there's been some cooperation. Okay. I don't want to belabor that point. I was just raising the dilemma that I think you see the court finds itself in, in view of the guidelines, sometimes.

shall be considered independently of any reduction for acceptance of responsibility." Note 2. There is no other Guideline with respect to § 3553(e), but in the Policy Statements of the Sentencing Commission, as amended in 1989 to correct a clerical error under paragraph 4(b) "Departures," is the indication that "a second kind of departure will remain unguided. It may rest upon grounds referred to in Chapter 5, Part K (Departures), or on grounds not mentioned in the Guidelines." So the statute and all the Guideline references, including the Policy Statement of the Sentencing Commission, are consistent with our construction of the statute, which is that the authority of a district court to depart from the Guidelines following a motion by the government under § 3553(e), acknowledging substantial assistance, is not limited so that a finite sentence must be imposed, rather probation is authorized.

The sentence imposed by the district court in case No. 88–5215 (Wilson), is accordingly VACATED and the case REMANDED for resentencing consistent with this opinion.

The sentence imposed by the district court in case No. 88–5216 (Rigney) is AFFIRMED.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.