**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul ADKINS, Jr.,
Defendant–Appellant.**

**No. 90–5047.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1991.

Decided June 20, 1991.

---

William Carlton Ingram, Jr., Floyd, Greeson, Allen and Jacobs, Greensboro, N.C., for defendant-appellant.

Robert Holt Edmunds, Jr., U.S. Atty., argued (Richard S. Glaser, Jr. and Charles Francis, Asst. U.S. Attys., on brief), Greensboro, N.C., for plaintiff-appellee.

Before WIDENER and HALL, Circuit Judges, and ELLIS, District Judge for the Eastern District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Paul Adkins appeals his conviction following a jury trial of carrying or using a firearm in relation to a crime of violence. He also appeals his sentences for the firearm conviction and the underlying crime of violence, bank robbery, to which he pleaded guilty.

I.

On September 27, 1989, Adkins met with three coconspirators (Robert Baldwin, Roderick Jackson, and Gary Hall) at Baldwin's house in Salisbury, North Carolina. Though they made no specific plans, the four discussed committing a bank robbery the next day.

On the following day, at Baldwin's suggestion, the four drove to Mount Pleasant,

North Carolina, because Baldwin knew of a good bank to rob there. They arrived at the bank at 9:45 a.m.

Baldwin went inside to "case" the situation. He came back out and reported that everything was clear. The group decided that Jackson and Hall would actually rob the bank. Baldwin gave Hall a brown pouch with a .32 revolver inside. Adkins provided Jackson a gun and Hall some mascara. Hall attempted to disguise himself with the mascara by drawing a mole on his cheek.

At 10:45, Jackson and Hall entered the bank, brandished the guns, and demanded money from two different tellers. The tellers filled bags supplied by the robbers with nearly $3,300. Jackson then ordered the tellers to lie on the floor. He told them that "someone outside" was watching and would kill them if they did not stay put.

Jackson and Hall ran from the bank to their waiting compatriots. Adkins was at the wheel of the getaway car, Jackson's Ford Escort.

Within moments, local police were aware of the robbery. Lieutenant Barringer of the county sheriff's office was sitting in his stopped patrol car. The Escort happened to pass, and all four occupants of the vehicle turned around and stared directly at the officer. His suspicion aroused, Barringer pulled out to follow the Escort. He put on his siren and blue light, but Adkins did not pull over.

After Barringer had followed for a mile, Adkins suddenly stopped the Escort in the middle of the highway. Barringer was then sufficiently alarmed to call for assistance.

Baldwin, Hall, and Adkins fled into nearby woods. They ignored Barringer's commands to stop. Jackson was arrested. He gave permission for a search of the vehicle. Barringer found Baldwin's .32 revolver and a brown paper bag containing $858. According to Hall's later testimony, Adkins had retrieved his gun from Jackson after

the robbery and had buried it somewhere in the woods.

Other county police officers arrived. They found and arrested Hall and Adkins in the surrounding woods. Baldwin was not captured until later that evening, after breaking into a house and forcing its female occupant to drive him to Charlotte, North Carolina.

All four perpetrators were charged in a five-count indictment on October 30, 1989. Adkins was named in Count I (bank robbery—18 U.S.C. § 2113) and Count 5 (carrying or using a firearm in relation to a crime of violence—18 U.S.C. § 924(c)). On both counts, the government's theory was that Adkins was an aider and abettor. Jackson and Hall pleaded guilty to the charges against them, and Hall testified against Baldwin and Adkins. Adkins pleaded guilty to the bank robbery charge, but went to trial on the firearm count.[1]

Adkins was found guilty by a jury. He was sentenced as a career offender to consecutive terms of 210 months for bank robbery and 60 months for use of a firearm. He appeals the firearm conviction and the total sentence.

## II.

■ The district court instructed the jury that:

The indictment or formal charge against any defendant is not evidence of guilt. Indeed, each defendant is presumed by the law to be innocent. The law does not require a defendant to prove his innocence or produce any evidence at all. And if a defendant elects not to testify, you may not consider that in any way during your deliberations.

The Government has the burden of proving each defendant guilty beyond a reasonable doubt. And if it fails to do so, you must find that defendant not guilty. Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that a defendant's guilt be proved beyond all possible doubt. It is

1. Adkins was tried along with Baldwin, who did not plead guilty to the bank robbery. Adkins

makes no assertion that he was prejudiced by this joint trial.

only required that the Government's proof exclude any reasonable doubt concerning a defendant's guilt.

Appellant argues that this instruction attempted to define "reasonable doubt" by stating that the government need not prove guilt "beyond all possible doubt." Therefore, appellant asserts, the district court should have given a "complete" definition.

This circuit has repeatedly warned against giving the jury definitions of reasonable doubt, because definitions tend to impermissibly lessen the burden of proof. *Murphy v. Holland*, 776 F.2d 470, 475 (4th Cir.1985), *vacated on other grounds*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986); *United States v. Love*, 767 F.2d 1052, 1060 (4th Cir.1985); *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir.1983). Even where the defendant requests that reasonable doubt be defined, a district court need not do so. *United States v. Headspeth*, 852 F.2d 753, 755 (4th Cir.1988), *abrogated on other grounds*, *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The only exception to our categorical disdain for definition is when the jury specifically requests it. *Id.*

We agree with the government that the court's instruction in this case did not even attempt to "define" reasonable doubt. It accurately stated that the government's burden is not "beyond all possible doubt." It left "reasonable doubt" to its "self-evident meaning comprehensible to the lay juror." *Murphy*, 776 F.2d at 475.

### III.

In order to find Adkins guilty of the firearms count, the district court instructed the jury that it had to find:

First, that the defendant committed bank robbery or aided and abetted someone else in committing bank robbery, the felony offense charged in Count One;

Second, that such offense was a crime of violence; [2]

Third, that the defendant knowingly used or carried a firearm while committing the offense of bank robbery, or knowingly aided and abetted the use or carrying of a firearm by another person while committing the offense of bank robbery charged in Count One.

The appellant objected to the inclusion of the first element in this instruction, and now argues that the instruction was erroneous. He argues that inclusion of the first element allowed the jury to find him guilty of the firearms offense "solely because he was guilty of having aided and abetted the bank robbery itself." Appellant's Brief, at 8. This argument is specious. It assumes that the jurors ignored the rest of the instruction, particularly the third element, or else were incapable of understanding English. We see no reason to assume either.

### IV.

### A.

On the bank robbery conviction, Adkins was sentenced as a career offender. A career offender is one who (1) is 18 at the time of the instant offense, (2) is being sentenced for a crime of violence or controlled substance offense, and (3) has two prior felony convictions of crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1; *see* 28 U.S.C. § 994(h). "Felony conviction" means an offense punishable by over one year of imprisonment, notwithstanding that the jurisdiction in-

---

**2.** Whether an offense is a "crime of violence" is a question of law for the court, and not a question of fact for the jury. *See Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990) ("There was considerable debate over what kinds of offenses to include [in 18 U.S.C. § 924(e) ] and how to define them, but no [member of Congress] suggested that a particular crime might sometimes count toward enhancement and sometimes not, depending on the facts of the case.") Armed bank

robbery is unquestionably a crime of violence, because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see United States v. Shavers*, 820 F.2d 1375 (4th Cir.1987). Therefore, the second element of this instruction is unnecessary. Any error in submitting the issue to the jury benefited Adkins, however, by giving him a "bite at the apple" to which he was not entitled.

volved may have defined the offense as a misdemeanor. Adkins had two such prior state "misdemeanor" convictions that were counted as felonies.

At sentencing, both Adkins and his counsel expressed regret that the "misdemeanors" counted toward career offender status, but they admitted that they had found no authority for not counting them. This colloquy then ensued:

THE COURT: Well, I think that's something to, a question to address to Congress who passed the statute. Persons who have prior records can be— those prior records are taken into consideration when they commit another offense, and they are factored into the punishment of that later offense.

I hope you will never ever have any further difficulty. But if you should, what happens in this case is going to make the sentence longer in whatever further difficulty you have after this. That's a fact of life. And it's nothing you nor I can do anything about today simply because we think it is or is not a good idea.

But if you have any legal authority to the effect that it's not proper to do that, that it's illegal to do that, I'll be glad to hear that.

DEFENDANT ADKINS: No, I don't.

THE COURT: I don't either. But I'd be happy to consider whatever you have.

The district court then sentenced Adkins to the lowest end of the guideline range, 210 months, along with the mandatory consecutive 60 months for the firearm conviction.

Adkins now argues that the district court did not realize that it had the authority to depart downward where "career offender" status overstates the seriousness of past criminal conduct.

Appellant's counsel states that he researched the matter before sentencing and saw no means to avoid career offender status for Adkins. Soon after the sentencing, he discovered a then-new Eighth Circuit case, *United States v. Brown*, 903 F.2d 540 (8th Cir.1990), which held that a district court may depart downward where "career offender" status overstates criminal history. Moreover, the *Brown* court held that though it ordinarily would not review refusals to depart downward, it would vacate a sentence where the district court plainly wished to depart but erroneously believed it lacked the authority to do so. In this latter respect, *Brown* echoes our holdings in *United States v. Wilson*, 896 F.2d 856, 858, 859 (4th Cir.1990), and *United States v. Rogers*, 897 F.2d 134, 138 (4th Cir.1990).

### B.

■ We must first decide whether the district court may depart downward where "career offender" status exaggerates the defendant's prior offenses, i.e. whether we agree with *Brown*.[3] If not, we need go no further, because the district court's alleged belief that it could not depart would not be erroneous.

*Brown* does not stand alone. The Ninth Circuit has endorsed its rule, *United States v. Lawrence*, 916 F.2d 553, 554–55 (9th Cir.1990), while the First Circuit has reserved the issue. *United States v. Norflett*, 922 F.2d 50, 54 n. 5 (1st Cir.1990). The only contrary authority we find is a district court opinion from this circuit. *United States v. Saunders*, 743 F.Supp. 444, 447 (E.D.Va.1990). This circuit has recognized that departure is at least possible in career offender cases, *e.g., United States v. Wright*, 924 F.2d 545 (4th Cir. 1991), though we have not addressed the propriety of this particular ground for departure.

The *Brown* and *Lawrence* courts reached their common result by applying policies from the criminal history guidelines to career offender status. This rationale is hardly surprising, inasmuch as both guidelines concepts have their roots in the single concept of recidivism. Moreover,

---

**3.** The United States rests its argument for affirmance entirely on the appellant's failure to request a downward departure, and has not alternatively argued that *Brown* is incorrectly decided.

the courts are specifically permitted to look to the policies of the guidelines as a whole when imposing a sentence. U.S.S.G. § 1B1.1(i).

"Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses with a reasonable degree of precision, mathematically accurate evaluation of the countless possible permutations of criminal history, involving offenses high and petty committed in numerous jurisdictions, would be at best unwieldy. The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score. U.S.S.G. § 4A1.3.

The test for "career offender" status is certainly no less fraught with potential imprecision. As Application Note 3 to U.S.S.G. § 4B1.2 provides, " '[p]rior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." This definition encompasses an enormous variety of crimes. The prior offenses must involve violence or controlled substances to count toward career offender status; nonetheless, there is clearly a potential for wide discrepancy in the gravity of past antisocial conduct among "career offenders."

At bottom, "career offender" is a type of, not an alternative to, criminal history. The primary consequence of the status is its criminal history category. It is a shortcut[4] to Category VI for two kinds of recidivism—controlled substance and violent— that Congress deemed especially dangerous. However, once a defendant has taken this shortcut, we see no reason why he should not stand on an equal footing with everyone else whose criminal history calculation is Category VI.

We join the Eighth and Ninth Circuits and hold that a district court may, in an atypical case, downwardly depart where career offender status overstates the seriousness of the defendant's past conduct. We emphasize that such departures, like all departures, are reserved for the truly unusual case, and in deciding whether to depart, a district court should follow the procedure outlined in our prior cases. *United States v. Hummer,* 916 F.2d 186 (4th Cir. 1990); *United States v. Summers,* 893 F.2d 63 (4th Cir.1990).

## C.

■ We are not entirely convinced from the transcript of the sentencing hearing that the district court believed it lacked the authority to consider a departure. The court plainly believed that there was no way to avoid counting the prior offenses in the guidelines calculation of career offender status. If appellant had made a specific request for a downward departure, the record would doubtless be more lucid. This failure causes us to hesitate to remand for resentencing; district courts are justly chagrined to have their decisions overturned for reasons that were not presented to them. We do not wish to encourage frivolous, baseless requests for departures; nonetheless, new rules of law arise from the creative energies of lawyers who are willing to make good faith arguments for the modification or extension of existing law. Appellant's counsel was acting under no worse constraint than was defense counsel in *Brown.*

Nonetheless, we will vacate Adkins' sentence on the bank robbery conviction,[5] and remand for resentencing. We today join two other circuits in adopting a particular rule in an undeveloped area of law. The district court's decision to sentence appel-

---

**4.** In fact, "career offender" is something of a misnomer. A defendant who gets to Category VI through the ordinary criminal history calculations is likely to have a greater quantity of actual offenses than a "career offender."

**5.** Adkins' career offender status has no bearing on his sentence for the firearm conviction; hence, that sentence is affirmed.

lant to the shortest term possible under the career offender guidelines at least suggests that it was willing to consider a downward departure. Its comment that "it's nothing you nor I can do anything about today" likewise implies that the district court felt it had no power to depart. We may be misinterpreting these comments, and the district court is of course free to tell us so on remand. We neither express nor intend to imply an opinion on the propriety of a departure in this case.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

ELLIS, District Judge, dissenting:

I respectfully dissent from Section IV of the majority's opinion. My reasons for doing so are set forth in my opinion in *United States v. Saunders,* 743 F.Supp. 444 (E.D. Va.1990).

In essence, I cannot accept the majority's holding that district courts may depart downward where they conclude that career offender status "exaggerates the defendant's prior offenses." *Ante,* at 951. This holding, in my view, contravenes a categorical Congressional command that finds accurate expression in the Sentencing Commission's guidelines. Thus, in 28 U.S.C. § 994(h), Congress directed that the Commission "shall assure" that the guidelines for career offenders "specify a sentence to a term of imprisonment at or near the maximum term authorized...." Complying with this directive, the Commission promulgated § 4B1.1, which requires that "[a] career offenders' criminal history category *in every case shall be Category VI.*" (Emphasis added.) This mandatory provision overrides the flexibility otherwise accorded sentencing judges in U.S.S.G. § 4A1.3 to depart from the guidelines where a defendant's criminal history under-represents or over-represents his or her past conduct. Significant, too, is that U.S.S.G. § 4A1.3 makes no mention of the career offender category.

In sum, I would affirm the district court in this case because I conclude that sentencing judges have no authority to depart downward from the career offender guide-line on the ground that the seriousness of defendant's past conduct is overstated. Giving sentencing judges this authority might well be sound public policy, but Congress, which alone has the power to grant this authority, has not yet done so.