956 F.2d 1163
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sheldon JACKSON, Defendant-Appellant.
 No. 91-5815.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1992.
Decided March 9, 1992.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert R. Merhige, Jr., Senior District Judge. (CR-90-74)
 Argued: John Edward Basilone, Moody, Strople & Kloeppel, Ltd., Portsmouth, Va., for appellant; Samuel G. Nazzaro, Jr., Assistant United States Attorney, Wheeling, W.Va., for appellee.
 On Brief: William A. Kolibash, United States Attorney, Wheeling, W.Va., for appellee.
 N.D.W.Va.
 AFFIRMED.
 Before SPROUSE, WILKINS and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Sheldon Jackson challenges on numerous grounds his conviction and sentence for various drug offenses. Finding no merit in any of his claims, we affirm.
 
 I.
 
 2
 On September 20, 1990, a grand jury in the Northern District of West Virginia returned an eight-count superseding indictment against Sheldon Jackson. Jackson was charged with one count of conspiracy to possess with intent to distribute and to distribute cocaine, see 21 U.S.C. § 846; four counts of possession with intent to distribute cocaine, see id. § 841(a)(1); one count of distribution of cocaine, see id.; one count of distribution of cocaine within 100 feet of a playground, see 21 U.S.C.A. § 860; and one count of aiding and abetting the distribution of cocaine within 100 feet of a playground, see 18 U.S.C. § 2(a).
 
 
 3
 Jackson's trial began on November 23, 1990. The Government's evidence consisted of the testimony of several witnesses who had first-hand knowledge of Jackson's drug dealing, the testimony of an undercover police officer who had purchased cocaine from Jackson, the testimony of two police officers who had seen Jackson at the location of the undercover purchase shortly after the deal was consummated, and a tape recording of the transaction.[1]
 
 
 4
 Jackson was convicted on all eight counts. On March 8, 1991, Jackson was sentenced to eighty-seven months in prison and was ordered to serve a six-year term of supervised release upon completion of his prison term. He was also assessed a $2,000 fine.
 
 
 5
 Jackson challenges his conviction on thirteen different grounds, and his sentence on two different grounds. None of his claims has merit, and only two warrant discussion.[2]
 
 II.
 
 6
 Several months before trial, Jackson requested that the Government turn over certain Jencks Act and Giglio materials. See 18 U.S.C. § 3500(b) (on motion of defendant, Government must produce any statement of Government witness "in the possession of the United States which relates to the subject matter as to which the witness has testified"); United States v. Giglio, 405 U.S. 150 (1972) (Government must disclose existence of understanding or agreement with Government witness as to future prosecution). The Government represented that it would turn over the materials "three days prior to trial." J.A. at 8-10. Contrary to the Government's representation, however, the material was not turned over to Jackson until the morning that trial began. Jackson filed a motion to prohibit the Government from calling any witnesses as to whom it had failed to provide the requested materials three days prior to trial. The district court denied the motion.[3]
 
 
 7
 Jackson contends that the district court's denial of his motion was error and that the Government's failure to turn over the material three days prior to trial requires that a new trial be granted.[4] He argues that the Jencks Act and Giglio material was "critical" to his defense, and that the late production of the documents left him with "insufficient time to review and make use of the material." Appellant's Br. at 30.
 
 
 8
 In particular, he claims that the materials uspported his defense at trial that he was merely a drug user, and not a dealer. We reject this claim.
 
 
 9
 The Jencks Act provides that the Government is only required to produce requested materials "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(b) (emphasis added); see United States v. White, 750 F.2d 726, 729 (8th Cir.1984) ("Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so."). Because the Government produced the requested materials before any Government witness had testified, there was no violation of the Jencks Act. Jackson does not contend otherwise. He argues instead that the Government is "bound by its own representations," and that "[t]he well-recognized legal principles of waiver and estoppel should ... operate [ ] to preclude the conduct of the government with regard to the late production of the voluminous ... materials." Appellant's Br. at 31.
 
 
 10
 Jackson cites no authority to support his estoppel argument, and we are unaware of any. Estoppel does not ordinarily lie against the Government. See Office of Personnel Management v. Richmond, 110 S.Ct. 2465, 2469 (1990) (dictum) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as against private litigants."); Heckler v. Community Health Servs., 467 U.S. 51, 60 (1984) (dictum) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant."). Even assuming that there is an "affirmative misconduct" exception to the general rule against Government estoppel, see United States v. Asmar, 827 F.2d 907, 912 (3d Cir.1987), Jackson has not shown that the Government intentionally withheld the material for an additional three days in order to obtain a litigation advantage or for any other improper purpose.
 
 
 11
 In any event, apart from a conclusory assertion that he would have been able to show that he was a drug user rather than a dealer if he had been provided the materials earlier, Jackson has not demonstrated how he was prejudiced by the Government's failure to turn over the materials when promised. See Geva v. Leo Burnett Co., Inc., 931 F.2d 1220, 1223 (7th Cir.1991) (injury to promisee is element of promissory estoppel claim); Arcadian Phosphates, Inc., v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir.1989) (same). Even assuming that an additional three days with the requested materials would have enabled Jackson to bolster his defense, the evidence against Jackson was so overwhelming that any claim of prejudice must be rejected. See Heckler, 467 U.S. at 66 ("[A]ssuming estoppel can ever be appropriately applied against the Government, it cannot be said that the detriment respondent faces is so severe or has been imposed in such an unfair way that [the Government] ought to be estopped....").
 
 
 12
 A district court's denial of a motion to exclude testimony is reviewed under an abuse of discretion standard. See Imperial Colliery Co. v. Oxy USA Inc., 912 F.2d 696, 705 (4th Cir.1990). It cannot be said that the court abused its discretion in this case by denying Jackson's motion to exclude the Government witnesses' testimony.
 
 III.
 
 13
 Jackson also claims that the district court erred in giving the Government's proposed jury instruction number nine (dealing with intent),[5] and in not giving Jackson's proposed jury instruction number five (defining reasonable doubt). Jackson concedes that the Fourth Circuit has approved of similar instructions on intent, see United States v. Love, 767 F.2d 1052, 1059-60 (4th Cir.1985) (rejecting challenge to intent instruction similar to instruction given in this case), cert. denied, 474 U.S. 1081 (1986), and has disapproved of instructions defining reasonable doubt, see United States v. Adkins, 937 F.2d 947, 950 (4th Cir.1991) ("This circuit has repeatedly warned against giving the jury definitions of reasonable doubt.... Even where the defendant requests that reasonable doubt be defined, a district court need not do so."). Nevertheless, Jackson argues that because other circuits disapprove of intent instructions and approve of instructions defining reasonable doubt, the district court's jury instructions violated his Fourteenth Amendment right to equal protection of the laws, and he is entitled, as a consequence, to a new trial.
 
 
 14
 The district court committed no error in its instruction on intent or in refusing to give an instruction defining reasonable doubt. Indeed, as appellant acknowledges, the court faithfully followed this circuit's precedents on both instructions. Jackson cites no authority to support his novel claim that circuit splits violate the Equal Protection Clause, and we reject the claim.[6]
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Several long-time acquaintances identified the voice on the tape as Jackson's
 
 
 [2]
 The two claims that we discuss are those that Jackson's counsel focused upon at oral argument
 
 
 [3]
 The material consisted of more than 500 pages, approximately twelve of which referred to Jackson. At the hearing on Jackson's motion, the Assistant United States Attorney expressed his willingness to identify for Jackson's counsel the passages relating to Jackson. J.A. at 42
 
 
 [4]
 Jackson did not move for a continuance upon being presented with the requested materials
 
 
 [5]
 The district court instructed the jury as follows:
 [I]ntent ordinarily may not be proved directly, because there simply is no way of fathoming or scrutinizing the operation of the human mind.... [T]he court charges you that you may infer ... a defendant's intent from the surrounding circumstances, you may consider any statement made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind. You may consider it reasonable to draw the inference and find that a person intended the nature [sic] and probable consequences of acts knowingly done or knowingly omitted.
 J.A. at 288-89. Before giving this instruction, the district court told counsel for both parties that he would give the instruction only "because [this] circuit has not said otherwise," and that he "d[id]n't like it." Id. at 252.
 
 
 [6]
 We have considered Jackson's remaining claims, and conclude that they too, are without merit