966 F.2d 1445
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
James F. KELLY, Sr., Defendant-Appellant.
 No. 91-5693.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: June 26, 1992
 
 Argued: William W. Taylor, III, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for Appellant.
 Robert Daniel Potter, Jr., Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 On Brief: Steven M. Salky, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for Appellant.
 Margeret Person Currin, United States Attorney, Richard H. Moore, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 Before ERVIN, Chief Judge, WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, and WILLIAMS, Senior United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 * James F. Kelly, a federal prisoner and former Chief Executive Officer of Aeroglide, Inc. ("Aeroglide") and its subsidiary, Aeroglide Americas International, Inc., appeals the sentence given to him after he pled guilty to Count Two of the Criminal Information. Count Two charged Kelly with conspiring to defraud the Agency for International Development ("AID"), to submit false claims, to make false statements to the United States, and to impede and impair AID in its proper administrative functions, all in violation of 18 U.S.C. § 371. The Appellant also pled guilty to a similar conspiracy count which occurred before the effective date of the Sentencing Reform Act of 1984.
 
 
 2
 Kelly raises three issues on appeal. First, he claims that he was improperly sentenced under the Sentencing Guidelines because the district court erred in calculating the Appellant's offense level by using a guideline which did not become effective until after the Appellant's crime was completed. Secondly, Mr. Kelly argues that the district court's refusal to make a downward departure following the Government's motion for a departure based on substantial assistance was error. Neither of these claims has merit. Lastly, Mr. Kelly claims that the fine he received as part of his sentence for Count Two was improperly calculated. We agree and have modified his fine accordingly. We briefly address the issues raised by the Appellant.
 
 II
 
 3
 In determining the Appellant's offense level, the district court, consistent with the presentence report, used a guideline which became effective on November 1, 1989. This version made significant changes in the amount of loss table under U.S.S.G.s 2F1.1. Before § 2F1.1. was amended, that section called for a lighter sentence for this offense.[1] The Appellant argues that his offense was completed before the amendment became effective on November 1, 1989 and, therefore, applying the higher offense level violated the Ex Post Facto Clause of the Constitution.
 
 
 4
 Title 18 U.S.C. § 3553(a)(4) requires the court to apply the guideline that is in effect on the date the defendant is sentenced. This statute gives a defendant the benefit of a favorable guideline amendment intervening between commission of the offense and the date of sentencing. In the case of an intervening substantive amendment which is harmful to the defendant, the Ex Post Facto Clause precludes application of that amended guideline. See Miller v. Florida, 482 U.S. 423 (1987) (applying the Clause to a state guideline sentencing scheme); United States v. Morrow, 925 F.2d 779, 782-83 (4th Cir. 1991) (ex post facto considerations prevent application of amendment to guidelines increasing penalty to conduct occurring prior to the effective date of amendment).
 
 
 5
 The core issue, then, is whether the conspiracy charged in Count Two continued past November 1, 1989, the effective date of the amendment to guideline § 2F1.1. This Court has consistently held that new guidelines apply to conspiracies which "straddle" the effective date on which the Guidelines were established or amended. Applying the guidelines in effect at the time a conspiracy or other ongoing crime concludes violates neither the due process nor the Ex Post Facto Clause. See United States v. Meitinger, 901 F.2d 27, 28 (4th Cir. 1990) ("In this case, the conspiracy continued after the effective date of the Guidelines, and thus the Guidelines are applicable in this case."); United States v. Sheffer, 896 F.2d 842, 845 (4th Cir. 1990) ("We agree with our sister circuits that the application of the Guidelines to an ongoing conspiracy does not in any way violate the [E]x [P]ost [F]acto clause.").
 
 
 6
 Mr. Kelly maintains that the illegal scheme to overstate the cost of fertilizer equipment sold to a Pakistani businessman as charged in Count Two was completed by the end of 1988. Despite the fact that the Criminal Information charges that the conspiracy continued until July 1990, the Appellant flatly denies that there is a fact in the record that establishes conduct in furtherance of the conspiracy charged occurring after November 1, 1989. This argument is without merit.
 
 
 7
 Count Two charged the Appellant with participating in a conspiracy which began around July 1987 and "continu[ed] up to and including July, 1990." (J.A. 9-10.) On the last page of the plea agreement, the page on which the Appellant's signature appears, Mr. Kelly admits among other things that the conspiracy described in the Criminal Information was willfully formed and existing at or about the time alleged and that he was willfully a member of the conspiracy. (J.A. 22.) Furthermore, the Criminal Information charged the following overt act:
 
 
 8
 Between July of 1988 and July of 1990, members of the conspiracy made and caused to be made numerous false and fraudulent statements to AID through various documents, correspondence and other communications that represented to AID that approximately $3.3 million of fertilizer machinery had been sent to Pak-Green in Pakistan, at the time well knowing that these representations were false and fraudulently made.
 
 
 9
 (J.A. 13.) Cf. United States v. Bakker, 925 F.2d 728, 739 (4th Cir. 1991) (noting that the indictment did not charge defendant with taking any overt acts in furtherance of the conspiracy after November 1, 1987 in holding that a conspiracy did not straddle the effective date).
 
 
 10
 In addition, Appellant's counsel admitted to the court, "You know the time period on the conspiracy runs from "86 through the early part of 1990." (J.A. 263.) Moreover, the record amply supports the district court's decision to apply the amended guidelines because the Appellant and his co-conspirators were still active participants until well into the summer of 1990. At sentencing, the Government offered numerous documents that proved the conspiracy existed at least as late as July of 1990. In particular, a handwritten memorandum from Aeroglide employee Winters to co-defendant Estrada dated January 29, 1990, was presented to the court. This memo detailed a telephone conversation Winters had with an AID official who was attempting to verify Aeroglide's pricing on the Pakistani contract. Winters attempted to disguise Aeroglide's involvement in the fraudulent scheme and made numerous false statements. A carbon copy of this memo was directed to Appellant Kelly.
 
 
 11
 A district court's application of the Sentencing Guidelines is reviewed under the "due deference" standard. The amount of deference due to a sentencing judge's application of the Guidelines to the facts depends on the circumstances of the case. If, as here, the issue turns primarily on a factual determination, an appellate court should apply the "clearly erroneous" standard. Under this standard and for the foregoing reasons, the district judge was not in error in applying the Guidelines in effect after November 1, 1989.
 
 III
 
 12
 The Appellant argues that the trial court's denial of the Government's § 5K1.1. motion was improper because it was based upon a mistake of law regarding the court's authority. The Government in this case requested that the district court depart from the applicable guideline range on Count Two on the basis of Mr. Kelly's substantial assistance. The court below refused to depart downward and sentenced Mr. Kelly to the maximum period authorized by the Guidelines. The Appellant maintains that this refusal to depart was a result of the court's misplaced doubts as to whether the law gave him the authority to depart.
 
 
 13
 Mr. Kelly argues that the sentencing judge made remarks indicating that he was confused by the apparent inconsistent positions taken by the Government on § 5K1.1. motions.[2] The Appellant suggests that the court's remarks show that the judge may have believed that Mr. Kelly's assistance had to have resulted in the apprehension or prosecution of foreign co-conspirators in order for him to depart downward. Based on this interpretation of the court's remarks, Mr. Kelly contends that the denial of the Government'ss 5K1.1. motion was error. See United States v. Wilson, 896 F.2d 856, 858-60 (4th Cir. 1990) (refusal to depart downward reviewable when court mistakenly believed its authority to depart downward was limited); United States v. Daiagi, 892 F.2d 31, 33 (4th Cir. 1989) (same).
 
 
 14
 Contrary to the Appellant's assertions, there never appeared to have been any "confusion" over this issue. The district judge never stated that he was confused as to whether § 5K1.1 required that a defendant's cooperation result in the apprehension or prosecution of others. The trial court only questioned the Government in an attempt to clarify what it perceived to be the Government's inconsistent positions. (J.A. 258-59.) The court never expressed any doubt as to its own authority or discretion to downwardly depart once the Government made the appropriate motion. In fact, the trial court stated that it did understand the Government's motion and that it had given the matter some thought. (J.A. 259.) The decision to downwardly depart is a matter within the court's discretion. "When the district court recognizes its discretion to depart downward, its decision to decline to do so is not reviewable by this court." United States v. Graham, 946 F.2d 19, 22 (4th Cir. 1991). Although Mr. Kelly contends that the court mistakenly believed it was without authority to depart, the record refutes this contention. The court knew that it could depart. It refused, not because it had doubts as to its authority, but because it concluded that Mr. Kelly's offenses and the evidence did not justify departure.
 
 IV
 
 15
 The sentencing judge ordered that Mr. Kelly pay a punitive fine of $75,000 and a fine in the amount of $125,000 for the cost of his imprisonment and supervised release. The Appellant argues that the fine imposed was in excess of that allowed under the Guidelines, and the Government agrees that the Appellant's calculations appear to be correct. The fine amount for the Count Two offense was $75,000, but the total cost of confinement (41 months) and supervised release (24 months) should have comprised only $63,939.20. Therefore, the total amount of the fine, excluding any interest which was imposed, should have amounted to $138,939.20. We, therefore, modify Mr. Kelly's sentence to include a fine of $138,939.20-not $200,000.00.
 
 V
 
 16
 In conclusion, we find no merit in the Appellants' arguments regarding the application of the Sentencing Guidelines or the district court's refusal to depart downward. We do, however, modify the fine imposed on Mr. Kelly. Accordingly, we
 
 
 17
 AFFIRM AS MODIFIED.
 
 
 
 [1]
 The disadvantage to Mr. Kelly of applying the November 1989 version of § 2F1.1. is obvious. Applying the specific offense characteristics and other applicable adjustments under the old version of this section yields a total offense level of 17. Under this score, the sentencing range would have been 24-30 months. When the new version is applied, as the district court did in this case, the total offense level is 20 and the sentencing range is 3341 months. Kelly was given the maximum sentence of 41 months for his offense. Thus, if Mr. Kelly's argument is deemed persuasive, his sentence is 11 to 17 months more than it should have been
 
 
 [2]
 After the U.S.S.G. § 5K1.1. motion was made, the court criticized the Government because it felt that the Government was inconsistent in making the motion. The court stated:
 You know, the government takes two positions. I've seen the government, in drug cases, take the position, well, the guy told me everything but we didn't get any help out of him. You know, I don't know if its the government's position that you've got to get help out of them, or its their position that just an effort-now, I think the government kind of blows hot and cold on that and I'd like to find out what their feeling is.
 (J.A. 258-59.) At this point, the Government properly advised the court that a successful prosecution of others is not necessary under the standard for substantial assistance set out in the Guidelines. (J.A. 259.)