7 F.3d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert Alexander TISDALE, Defendant-Appellant.
 No. 92-5431.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
Decided: September 16, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-91-127-C-CR-MU)
 George Cernon Laughrun, II, Goodman, Carr, Nixon & Laughrun, Charlotte, North Carolina, for Appellant.
 Gretchen C. F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 Thomas J. Ashcraft, United States Attorney, H. Thomas Church, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The defendant, Albert Alexander Tisdale, was convicted of first degree murder pursuant to 18 U.S.C §§ 1111. Tisdale appeals, contending that the district court erred by taking judicial notice of special maritime and territorial jurisdiction, by refusing to allow counsel to argue punishment to the jury, by failing to instruct the jury as to the lesser-included offense of voluntary manslaughter, and by instructing the jury as to the definition of reasonable doubt. We affirm.
 
 
 2
 On July 9, 1992, Richard Eric Morton, the decedent, and his wife were each carrying boxes of papers to their first meeting of creditors in a bankruptcy proceeding at the Charles R. Jonas Federal Building in Charlotte, North Carolina. Morton's wife had laid a box down near a trash can outside the federal building, but on the courthouse property, when Tisdale, Morton's ex-business partner, walked to within a few feet of Morton and shot him four times. Tisdale testified that he brought the gun to the courthouse because he believed that the decedent always carried a knife and he thought there might be trouble. Tisdale's explanation for shooting Morton was that he thought Morton was "going for his knife." Tisdale, however, further testified that he never saw a knife on the decedent before he shot him.
 
 
 3
 Tisdale's first argument on appeal is that the district court erred by failing to instruct the jury that it was taking judicial notice of the element of the special maritime and territorial jurisdiction of the United States pursuant to 18 U.S.C. §§ 1111, 7(3). Tisdale argues that federal jurisdiction is an essential element of the federal murder statute, that the government offered no proof as to this element, and that it was error for the district court to have failed to instruct the jury under Fed. R. Evid. 201(g).[1] First, we are of opinion that it was not error for the district court to take judicial notice of the existence of special maritime and territorial jurisdiction for purposes of 18 U.S.C. §§ 1111, 7(3). Although jurisdiction is an element of the federal crime of murder, there was never any dispute at trial as to the location of the shooting, nor was there any showing by Tisdale that the shooting could have conceivably occurred elsewhere. Moreover, the record amply reflects the physical location of the shooting as on the grounds of the Charles R. Jonas federal building in Charlotte, North Carolina. With no controversy over the location of the occurrence, we cannot find that the district court erred in its taking judicial notice of special maritime and territorial jurisdiction. See United States v. Lossiah, 537 F.2d 1250, 1251 (4th Cir. 1976). See also United States v. Anderson, 528 F.2d 590 (5th Cir.), cert. denied, 429 U.S. 837 (1976).
 
 
 4
 Secondly, we are of opinion that it was not reversible error for the district court to refuse to instruct the jury under Fed. R. Evid. 201(g) as to its taking judicial notice of the special maritime and territorial jurisdiction requirement in 18 U.S.C. § 1111. While we would agree that the best course in a criminal case is to instruct the jury concerning the court's taking of judicial notice, particularly over an essential element of a crime, it was not reversible error to omit that instruction here where the evidence of the location was so completely an accepted fact.[2] See United States v. Piggie, 622 F.2d 486, 487-88 (10th Cir.), cert. denied, 449 U.S. 863 (1980). That the defendant suffered prejudice from this error is not suggested. See United States v. Mechanic, 475 U.S. 66 (1986).
 
 
 5
 Tisdale next argues that the district court failed to instruct the jury on the lesser-included offense of voluntary manslaughter.[3] 18 U.S.C. § 1112(a). A district court should give a lesser-included offense instruction "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Under federal law, voluntary manslaughter is distinguishable from murder by the element that the killing was done "[u]pon a sudden quarrel or heat of passion," the existence of which effectively excludes the malice aforethought element of first and second degree murder as the statute provides. See United States v. Scafe, 822 F.2d 928, 932 (10th Cir. 1987). See also 18 U.S.C. § 1112(a). Therefore, for the district court to have erred in the instant case, the evidence must have been sufficient to have allowed a jury to rationally find that Tisdale could have killed Morton upon a sudden quarrel or in heat of passion.
 
 
 6
 A review of the evidence presented at trial reflects that there was no reasonable basis on which a jury could have found that Tisdale acted with heat of passion. Although there was some evidence that the decedent's declaration of bankruptcy might have left Tisdale with some debt obligation on two joint promissory notes, this was hardly the type of provocation that would drive a man to the level of irrationality required here. All other evidence reflects that the shooting was conducted in a calm and deliberate manner. The record shows that on the day of the shooting Tisdale ate breakfast at a nearby restaurant, waited near the federal courthouse, walked over to the decedent upon the decedent's arrival, and shot the decedent four times at point-blank range. And while Tisdale testified that he shot Morton because he thought Morton was going for his knife, Tisdale admitted that he never saw the decedent with a weapon that day.
 
 
 7
 Based on these facts, the jury was not only able to find malice aforethought, but was also able to find premeditation, returning a guilty verdict of first degree murder. For these reasons we are of opinion that there was insufficient evidence for the jury to have rationally found that Tisdale acted upon a sudden quarrel or with heat of passion when he shot Morton; therefore, it was not error for the district court to have declined to instruct the jury on the lesser-included offense of voluntary manslaughter.
 
 
 8
 Next, Tisdale contends that he should have been allowed to argue his potential punishment to the jury. This argument is without merit. The district court has broad discretion to manage the closing arguments of counsel,[4] particularly when those arguments relate to the respective functions of the court and jury. In the federal system, punishment is the exclusive province of the court, not the jury, whose sole function is the determination of guilt or innocence. See United States v. Del Toro, 426 F.2d 181, 184 (5th Cir.) cert. denied, 400 U.S. 829 (1970). We are of opinion, therefore, that the district court did not err in not allowing references to punishment in Tisdale's closing argument, and instructing the jury that punishment was exclusively a matter for the court.
 
 
 9
 Finally, Tisdale argues that the district court should not have attempted to define the reasonable doubt standard. Although we have admonished district courts not to define reasonable doubt to the jury, see United States v. Adkins, 937 F.2d 947, 950 (4th Cir. 1991), it is not automatically reversible error to do so. United States v. Moss, 756 F.2d 329, 333 (1985). In the instant case, Tisdale was not prejudiced, and we note the mild definition of reasonable doubt given to the jury.[5] We are of opinion that no reversible error was made by the district court in this respect.
 
 Tisdale's conviction is accordingly
 
 10
 AFFIRMED.
 
 
 
 [1]
 Fed. R. Evid. 201(g) provides:
 (g) Instructing jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.
 
 
 [2]
 We also note that this court may take judicial notice of special maritime and territorial jurisdiction in a criminal case if the location is apparent from the record. See United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979)
 
 
 [3]
 In the instant case, the district court instructed the jury as to the crime of first degree murder, as well as instructing the jury to convict Tisdale alternatively of second degree murder if they found no premeditation. See 18 U.S.C. § 1111(a). After the close of all the evidence, the district court expressly found that there was no evidence to support a finding that Tisdale shot Morton in a sudden quarrel or heat of passion
 
 
 [4]
 See, e.g., Guam v. Ignacio, 852 F.2d 459, 462 (9th Cir. 1988); United States v. Lewis, 759 F.2d 1316, 1350 (8th Cir.), cert. denied, 474 U.S. 994 (1985)
 
 
 [5]
 The district court instructed the jury that:
 The term "reasonable doubt" means just what it says. It is a doubt based upon reason and common sense. Its meaning is no doubt self-evident and understood by you and the Court will not attempt to define the term further.