19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony V. THOMAS, a/k/a Tony, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony V. THOMAS, a/k/a Tony, Defendant-Appellant.
 Nos. 93-5171, 93-5233.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1994.
Decided March 21, 1994.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Elkins. Robert E. Maxwell, Chief District Judge. (CR-92-121)
 Joseph Michael McGuinness, McGuinness & Parlagreco, Salem, MA, for appellant.
 Thomas Oliver Mucklow, Asst. U.S. Atty. (William D. Wilmoth, U.S. Atty., on brief), Wheeling, WV, for appellee.
 N.D.W.Va.
 AFFIRMED IN PART AND DISMISSED IN PART.
 Before HALL and HAMILTON, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Anthony Thomas appeals his conviction and sentence for distributing crack cocaine. We affirm in part and dismiss in part.
 
 I.
 
 2
 The West Virginia state police were investigating drug distribution at the Charles Town racetrack. Theresa Hostler, a former drug user, acted as a confidential informant. The police would pay Hostler $25 to make a controlled buy. The transactions were sometimes recorded on audio or video tapes.
 
 
 3
 On October 27, 1992, Hostler was at the track with Trooper Steve Tucker. She saw defendant Anthony Thomas, and told Tucker that she thought she could buy crack cocaine from him. Tucker gave Hostler $50 and watched her as she approached Thomas. Hostler asked Thomas if he could get her any crack. Thomas told Hostler to wait a minute. Tucker watched as Thomas left Hostler and returned a little while later. Thomas sold Hostler .18 grams of crack. Hostler took the crack to Trooper Tucker. No recording of the buy was made.
 
 
 4
 Based on the testimony of Hostler and Tucker, a federal grand jury returned an indictment charging Thomas with distribution of crack cocaine.
 
 
 5
 On the morning of trial, Thomas' counsel objected to the all-white composition of the jury venire. Thomas himself requested new counsel, because, he alleged, his lawyer was campaigning for political office and had not had time to adequately prepare the case. The district court denied these motions.
 
 
 6
 The trial was a short, three-witness affair. Hostler testified that she bought crack from Thomas. She also admitted that she had prior convictions for possession of drug paraphernalia and assaulting a police officer. Trooper Tucker corroborated Hostler's testimony by recounting his visual observation of the drug buy. Finally, a state police chemist identified the rock that Thomas sold Hostler as crack cocaine. The defense presented no evidence. Thomas was convicted.
 
 
 7
 Though the small amount of crack cocaine would have generally produced a relatively short guidelines sentence, Thomas had two prior drug trafficking convictions, so he was a "career offender" under U.S.S.G. Sec. 4B1.1. The district court denied his request for a downward departure and sentenced him to 210 months, the minimum of his guidelines range.
 
 
 8
 Thomas appeals.
 
 II.
 
 9
 Thomas challenges the sufficiency of the evidence. We cannot disturb the guilty verdict if, considering the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found that the elements of the crime had been proved beyond a reasonable doubt. United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir.1990) (citing Jackson v. Virginia, 443 U.S. 307 (1979), and Glasser v. United States, 315 U.S. 60 (1942)), cert. denied, 498 U.S. 1083 (1991). On the face of the testimony, there was clearly enough to convict--Hostler stated that Thomas sold her the crack cocaine, Tucker saw activities that were consistent with such a sale, and Hostler produced a rock of crack cocaine immediately thereafter.
 
 
 10
 Thomas attacks this evidence the only way he can: he argues that Hostler framed him and is not worthy of belief. Thomas has a fair jury argument, but a poor appellate argument. While Hostler does not appear to be the most credible person in the world, the facts detracting from her credibility were before the jury, and it chose to believe her. Weighing credibility is the jury's job, not ours. Glasser, 315 U.S. at 77. The evidence was sufficient to support the conviction.
 
 III.
 
 11
 Thomas argues that because there were no blacks on his jury venire, he was denied equal protection. The constitutional issue is not that simple. He doubtless has a right to a venire (and ultimately a petit jury) from which blacks have not been legally, systematically, or purposefully excluded on account of their race. See, e.g., Taylor v. Louisiana, 419 U.S. 522 (1975) (venire must be a "fair cross-section" of the community); Swain v. Alabama, 380 U.S. 202 (1965) (use of peremptory strikes to exclude blacks violates equal protection); Strauder v. West Virginia, 100 U.S. 303 (1880) (state law disqualifying blacks from jury duty unconstitutional). Thomas cites no authority, though, and we know of none, for the proposition that he has a right to purposeful inclusion of members of a particular race on a venire or petit jury. The races are simply not intermingled in a standard proportion across the land. Thomas chose to commit his crime in a district containing a relatively low percentage of black residents.[1] Many fairly drawn[2] venires in the district may simply not have any black members.
 
 IV.
 
 12
 Thomas also argues that the indictment should have been dismissed because Hostler did not reveal her prior conviction for possession of drug paraphernalia when asked about prior convictions by the grand jury.[3]
 
 
 13
 Even if we forgive Thomas' failure to make a pretrial motion to dismiss the indictment, as required by Fed.R.Crim.P. 12(b)(2),[4] we find that his argument is meritless. The district court could not have dismissed the indictment merely because Hostler may have concealed evidence impeaching her credibility from the grand jury. A district court lacks the power to assess the weight of the evidence--including the credibility of witnesses--on which the grand jury chose to base a facially valid indictment. Costello v. United States, 350 U.S. 359 (1956).
 
 
 14
 On the other hand, if Thomas could show that the government suborned perjury in order to obtain the indictment, then he might be able to attack the indictment on the ground of prosecutorial misconduct. Even then, though, he would have to show that the misconduct "substantially influenced the grand jury's decision to indict." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988). Thomas has not even shown prosecutorial misconduct, let alone that the grand jury would probably not have indicted him if it had known of Hostler's other prior conviction. The petit jury certainly knew about Hostler's drug-paraphernalia conviction, but it found Thomas guilty anyway.
 
 V.
 
 15
 Finally, Thomas attempts to appeal the district court's denial of his request for a downward departure. A district court may depart downward if "career offender" status overstates the seriousness of a defendant's criminal history. United States v. Adkins, 937 F.2d 947 (4th Cir.1991). The district court fully understood its authority to depart--it mentioned Adkins by name--and found that a departure was inappropriate here.
 
 
 16
 When the district court understands that it has the authority to depart, its decision not to do so is unreviewable. United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 498 U.S. 819 (1990). This component of Thomas' appeal must therefore be dismissed.[5]
 
 
 17
 The judgment of conviction is affirmed, and Thomas' challenge to his sentence is dismissed.
 
 
 18
 AFFIRMED IN PART AND DISMISSED IN PART.
 
 
 
 [1]
 For example, according to the 1990 census, 12.1% of the population of the United States was black. In West Virginia, however, the percentage of black residents was only 3.1%--barely a quarter of the national average
 
 
 [2]
 Thomas does not assert that the venire was not drawn in accordance with the approved plan of the district under the jury selection standards codified at 28 U.S.C. Secs. 1861-1874. The district uses voter registration lists ("VLRs") from which juries are randomly drawn. Congress specifically endorsed the use of VLRs, 28 U.S.C. Sec. 1863(b)(2), and we have found the method to comport with the Equal Protection Clause. United States v. Cecil, 836 F.2d 1431 (4th Cir.) (en banc), cert. denied, 487 U.S. 1205 (1988)
 
 
 [3]
 She did admit, though, that she had been convicted of assaulting a police officer
 
 
 [4]
 Thomas did not have the grand jury transcripts on which his argument is based in time to file a pretrial motion. His predicament does not, though, reveal a flaw in Rule 12(b)(2). As we discuss in the main text, the content of grand jury testimony is generally not a ground for dismissal of an indictment, so the rule does not contemplate motions to dismiss on that basis
 
 
 [5]
 Thomas has also filed a pro se supplemental brief and reply. His assignments of error merit only brief discussion. His complaint that the government used "uncorroborated testimony" is just a rehash of the sufficiency of the evidence argument advanced by his counsel. Thomas also alleges ineffective assistance of counsel, prosecutorial misconduct at trial, and violations of the Jencks Act and Brady v. Maryland, 373 U.S. 83 (1963). None of these assertions are supported by the record on appeal, though Thomas is of course free to develop a record in support of them, if he can, in a habeas corpus proceeding