**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 92-5756

EMMANUEL IKECHUKWU ANUDU, a/k/a
Cletis, a/k/a Claytus,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 92-5772

EMMANUEL ODEMENA,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 92-5783

CHIJIOKE CHUCKWUMA, a/k/a Mark,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 92-5784

CYRIACUS AKAS a/k/a Koots,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 92-5785

EMMANUEL OKOLI,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 92-5800

CHUKS EVARISTUS NWANERI,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 92-5839
CHARLES ONWUAZOMBE, a/k/a Ebele
Onwuazor,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 92-5864
JEROME OKOYE ONWUAZOR, a/k/a
Peter,
Defendant-Appellant.

2

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CR-91-305-HAR)

Argued: September 29, 1995

Decided: February 16, 1996

Before MURNAGHAN, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Murnaghan and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** George Allan Epstein, Baltimore, Maryland; Paul Francis
Kemp, Rockville, Maryland, for Appellants. Jan Paul Miller, Assis-
tant United States Attorney, Robert Reeves Harding, Assistant United
States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:**
James C. Savage, Rockville, Maryland, for Appellant Onwuazor;
Walter C. McCord, Jr., Baltimore, Maryland, for Appellant Anudu;
Robert L. Bloom, Baltimore, Maryland, for Appellant Odemena; Dar-
rel L. Longest, Germantown, Maryland, for Appellant Akas; Benja-
min F. Neil, Baltimore, Maryland, for Appellant Nwaneri; Alan C.
Drew, Upper Marlboro, Maryland, for Appellant Onwuazombe.
Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

ERVIN, Circuit Judge:

Cyriacus Akas, Emmanuel Anudu, Chijioke Chuckwuma, Chuks E. Nwaneri, Emmanuel Odemena, Emmanuel Okoli, Charles Onwua-zombe, and Jerome Onwuazor were convicted in the District of Maryland of violating federal controlled-substances laws. They raise various issues on appeal. We find no grounds for reversal among their challenges to the admissibility of certain evidence, the sufficiency of the evidence, the jury instructions, and the district court's application of the United States Sentencing Guidelines.[1] We agree, however, that the government failed to properly establish venue for Counts XII and XIII, which involved two instances of heroin distribution by Onwua-zor and Okoli. Accordingly, we vacate the convictions under those two counts and affirm on all remaining counts.

I.

Federal subject matter jurisdiction over this case is grounded in the statutes defining the various offenses. It is not contested. Appellate jurisdiction lies under 28 U.S.C. § 1291. We address particular facts and standards of review in the portions of the opinion to which they are relevant.

II.

A. <u>Venue</u>

Appellants Onwuazor and Okoli contend that venue in the District of Maryland was improper for Counts XII and XIII. Count XII charged Onwuazor with distribution of heroin on or about May 9, 1991. Count XIII charged Onwuazor and Okoli with distribution of

_____

[1] In addition to the defendants' joint brief, supplemental pro se briefs were submitted by Chijioke, Okoli, and Onwuazombe. We have considered their arguments, and find them to be without merit.

heroin on or about May 15, 1991. Otherwise the Counts were identical.**2** The prosecution must establish venue by a preponderance of the evidence, and the trial court's decision is reviewed by this court de novo. United States v. Newsom, 9 F.3d 337, 338 (4th Cir. 1993). Venue is proper "in [any] district in which the offense was committed." Fed.

_____

**2** Both counts are replicated below:

COUNT XII

And the Grand Jury for the District of Maryland further charges that:

On or about May 9, 1991, in the State of New York, the State and District of Maryland, and elsewhere,

JEROME OKOYE ONWUAZOR

a/k/a Peter

the defendant herein, did knowingly, willfully and intentionally distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

21 U.S.C. § 841(a)

18 U.S.C. § 2

COUNT XIII

And the Grand Jury for the District of Maryland further charges that:

On or about May 15, 1991, in the State of New York, the State and District of Maryland, and elsewhere,

JEROME OKOYE ONWUAZOR

a/k/a Peter

AND

EMMANUEL OKOLI

the defendants herein, did knowingly, willfully and intentionally distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

21 U.S.C. § 841(a)

18 U.S.C. § 2

5

R. Crim. P. 18. The acts constituting commission are determined by the verbs used to define the crime. United States v. Walden, 464 F.2d 1015, 1018-19 (4th Cir.), cert. denied sub nom. , Ard v. United States, 409 U.S. 867 (1972), cert. denied sub nom., Cook v. United States, 410 U.S. 969 (1973). The operative verb in Counts XII and XIII is "distribute."

The government presented evidence that Onwuazor made a transfer of heroin to DEA Special Agent Dwayne M. Dodds on May 9 at Onwuazor's apartment in Queens, New York, and that Onwuazor and Okoli delivered two samples to Dodds and Special Agent Will Plummer on May 15 at a diner in Queens. Despite the correlation of that evidence with Counts XII and XIII, the government claims on appeal that the counts "relate not only to the New York samples but also to the larger quantities of drugs from which the samples came," quantities that "ultimately w[ere] distributed" in Maryland on or about the same dates. But it neither claims nor points to any evidence indicating that Onwuazor and Okoli personally delivered any heroin in Maryland on or about the dates in question. Instead it claims, under three theories,**3** that these appellants' actions in New York were sufficiently related to the deliveries in Maryland to support venue in the District of Maryland.

1.

The government's first theory is that distribution is a "continuing crime," and thus may be prosecuted in any district where it was "begun, continued, or completed." 18 U.S.C.§ 3237(a) (1988). These appellants' actions in New York, it contends, were part of a continuing crime of distribution that culminated in deliveries in Maryland. The trial judge agreed, stating: "I think distribution can be a continuous thing."

Circuits that have addressed this issue are divided. The Second Circuit has held that distribution is not a continuing crime, see United States v. Lartey, 716 F.2d 955, 967 (2nd Cir. 1983), but the First and

_____

**3** The district court instructed the jury on all three theories. We discuss the first theory in part II.A.1, infra, and the two alternative theories in part II.A.2, infra.

6

Eleventh Circuits have held that it is. United States v. Georgacarakos, 988 F.2d 1289, 1293 (1st Cir. 1993); United States v. Brunty, 701 F.2d 1375, 1380-82 (11th Cir.), cert. denied, 464 U.S. 848 (1983). In Georgacarakos, the First Circuit did not adequately distinguish distribution from the separate crime of possession with intent to distribute, which undisputedly is a continuing offense. Cf. United States v. Bruce, 939 F.2d 1053, 1055 (D.C. Cir. 1991) (noting that "the actual distribution is a separate crime"). It stated only that "[d]istribution and possession with intent to distribute are continuing crimes," 988 F.2d at 1293; moreover, the cases it cited for support do not deal at all with the separate crime of distribution, but hold merely that "possession of drugs with intent to distribute [is] a continuing crime." United States v. Kiser, 948 F.2d 418, 425 (8th Cir. 1991), cert. denied, 503 U.S. 983 (1992); accord United States v. Uribe, 890 F.2d 554, 559 (1st Cir. 1989). The Eleventh Circuit focused more particularly on distribution. It supported its conclusion with cases that, while not directly on point, affirmed distribution convictions of defendants who were involved in the transactions in question but were not present when the substances actually changed hands. Brunty, 701 F.2d at 1380-82 (citing, e.g., United States v. Wilson, 657 F.2d 755, 761-62 (5th Cir. 1981) ("`Activities in furtherance of the ultimate sale--such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drug[s]--are sufficient to establish distribution'" (quoting United States v. Wigley, 627 F.2d 224, 225-26 (10th Cir. 1980))), cert. denied, 455 U.S. 951 (1982); United States v. Davis, 564 F.2d 840, 844-45 (9th Cir. 1977) (upholding distribution conviction of doctor who improperly issued prescriptions), cert. denied, 434 U.S. 1015 (1978)).

Neither Georgacarakos nor Brunty acknowledged Blockburger v. United States, in which the Supreme Court addressed the issue under the now-superseded Harrison Narcotics Act. 284 U.S. 299, 302-03 (1932) (holding that a defendant may be charged separately for each of multiple deliveries). The Blockburger Court stated that a continuing crime is not one defined by a single occurrence:

> A distinction is laid down in adjudged cases and in text-writers between an offence continuous in its character . . . and a case where the statute is aimed at an offence that can be committed uno ictu.

7

284 U.S. at 302 (quoting In re Snow, 120 U.S. 274, 286 (1887)). The Court interpreted distribution to mean a distinct event, not an ongoing enterprise. Id. It held, therefore, that distribution is not a continuing offense. Id. at 302-03.

The Harrison Narcotics Act has been replaced, but Blockburger's reasoning is equally applicable to the current statute. Congress now defines "distribute" as "to deliver," which in turn means "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8), (11) (1988). Delivery is a single event, not a continuing operation, so distribution is not a continuing crime.

2.

The government argues in the alternative that we should sustain these appellants' convictions under either an aiding and abetting or a Pinkerton theory of liability, without regard to the events in New York. Aiding and abetting is implied by indictment for any crime, and need not be separately specified. E.g., United States v. Duke, 409 F.2d 669, 671 (4th Cir. 1969), cert. denied, 397 U.S. 1062 (1970). The Pinkerton theory allows a coconspirator to be convicted of a substantive offense that he neither participated in nor aided and abetted if the offense was committed in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946). Thus Onwuazor and Okoli could be held liable for distributions in which they did not participate if it were proven that the distributions (1) actually occurred, and (2) either were aided and abetted by Onwuazor and Okoli or were in furtherance of a conspiracy of which they were members. There is sufficient evidence in the record to support a verdict based on either theory.

3.

That the evidence could have supported an aiding and abetting or Pinkerton verdict does not end the inquiry, however. It is likely that the jury based its verdicts under Counts XII and XIII entirely on the transactions in Queens, without deciding whether the alleged deliveries in Maryland actually occurred. That would be permissible if distribution were a continuing offense, because the ultimate deliveries in Maryland would not be elements of the crime. This court could find

8

de novo and by a preponderance of the evidence that a chain of distribution led to Maryland, so venue would be proper in Maryland over prosecutions for transfers in Queens. Under the aiding and abetting and Pinkerton theories, however, the ultimate deliveries in Maryland are elements of the offense, so the jury must find beyond a reasonable doubt that those deliveries occurred. Although the evidence is sufficient that the jury could have made such a finding, we cannot be sure that it actually did. A conviction cannot stand if it is unclear whether the jury's verdict was based on a permissible or impermissible ground:

> a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground.

Zant v. Stephens, 462 U.S. 862, 881 (1983); Terminiello v. Chicago, 337 U.S. 1, 5-6 (1949); Cramer v. United States , 325 U.S. 1, 36 n.45 (1945); Williams v. North Carolina, 317 U.S. 287, 292 (1942)). Because a verdict based solely on the events in New York would be impermissible, we must reverse the convictions under Counts XII and XIII.

B. Jury Instructions

The appellants contest several portions of the trial court's charge to the jury. To determine whether a particular instruction was erroneous, we must view it "in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). Regarding most issues, we reverse only if there is "a `reasonable likelihood,' i.e., more than a mere possibility, that the jury misconstrued the instruction," United States v. Cobb, 905 F.2d 784, 789 n.8 (4th Cir. 1990) (quoting Boyde v. California, 110 S. Ct. 1190, 1198 (1990)), cert. denied sub nom., Hatcher v. United States, 498 U.S. 1049 (1991), and the misconstruction "prejudice[d] the jury's consideration of the dispositive issue," United States v. Davis, 739 F.2d 172, 175 (4th Cir. 1984). If the error involves the instruction on reasonable doubt, however, it can never be harmless, so we must reverse if we find a "reasonable likelihood that

9

the jury applied the instruction in an unconstitutional manner." <u>See</u> <u>Victor v. Nebraska</u>, 114 S. Ct. 1239, 1243 (1994).

1.

The appellants contend that the district court's instruction on reasonable doubt was constitutionally deficient. The trial court stated:

> Now, the fact that the defendant has been indicted by the grand jury raises no presumption whatever of guilt on the part of the defendant; that is, you should not assume that the accused is guilty merely because he is being prosecuted and because criminal charges have been filed against him. He comes into court presumed to be innocent and that presumption of innocence remains with him throughout his trial until the government overcomes it by evidence of the defendant's guilt beyond a reasonable doubt as to each and every element of the offense.

> The government has the burden of proof to show that the defendant is guilty of the crime for which he is charged; and the degree of proof that is necessary for the government to produce is proof that the defendant is guilty beyond a reasonable doubt.

> Also, the concurrence of the twelve minds of the jury is necessary to find the defendant guilty or not guilty. If, after considering all of the evidence and circumstances in this case, any one member of the jury has a reasonable doubt of the guilt of any defendant, then that juror cannot consent to a verdict of guilty. The burden is upon the government to prove all elements of the alleged crime and to do so beyond a reasonable doubt.

> Now, while the burden is upon the government to establish by proof every material fact as to the guilt of the defendants beyond a reasonable doubt, that does not mean that the

10

> government must prove the defendants guilty to an absolute or mathematical certainty.**4**

The appellants contend not that the alleged definition was inaccurate, but that it was incomplete and misleading. They argue that it focused only on "what the government did not have to prove," and thus failed to emphasize the high level of proof required to eliminate reasonable doubt. Without that emphasis, they conclude, the jury may have applied a lesser burden of proof than that required by the constitution.

The Supreme Court addressed a nearly identical instruction in Victor v. Nebraska. Petitioner Sandoval**5** contested the trial judge's instruction that "a reasonable doubt is `not a mere possible doubt.'" Victor, 114 S. Ct. at 1248. The Court rejected Sandoval's argument because the high level of proof required is implicit in the term "reasonable doubt": "[A] `reasonable doubt,' at a minimum, is one based upon `reason.' A fanciful doubt is not a reasonable doubt." Id. (internal quotations and citations omitted).

We addressed an instruction even more similar to the instruction in this case in United States v. Adkins. The Adkins trial court did not specify the level of proof required to eliminate reasonable doubt, but did state that "it is not necessary that a defendant's guilt be proved beyond all possible doubt." 937 F.2d 947, 949 (4th Cir. 1991). We affirmed, holding that the trial court accurately stated that the government's burden is not "beyond all possible doubt," and properly left reasonable doubt to its "self-evident meaning comprehensible to the lay juror." Id. at 950 (quotation and citation omitted). In its instruc-

_____

**4** The parties disagree about whether the final paragraph of the instruction was an "attempt to define" reasonable doubt or a mere "comment." Their arguments are irrelevant, however, because the Supreme Court recently clarified that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so," if, "taken as a whole," their instructions "impress[ ] upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." Victor, 114 S. Ct. at 1243, 1247 (internal quotations and citations omitted).

**5** The Supreme Court paired Sandoval v. California with Victor v. Nebraska.

11

tions in this case, the trial court repeated "reasonable doubt" five times. Because the standard's meaning is self-evident, there is no "reasonable likelihood that the jury applied it in an unconstitutional manner." Victor, 114 S. Ct. at 1243.

2.

The appellants also contest the district court's instruction, to which they objected at trial, that a witness ordinarily is assumed to speak truthfully:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. Ordinarily, it is assumed that a witness will speak the truth. But this assumption may be dispelled by the appearance and conduct of the witnesses, or by the manner in which the witnesses testified, or by the character of the testimony given.

The government acknowledges that a "presumption of truthfulness" instruction constitutes error, but argues that it was harmless in this case.

The appellants cite United States v. Varner, in which we held that a similar instruction was not harmless under the circumstances. 748 F.2d 925, 927 (4th Cir. 1984)). But the trial judge in Varner placed great emphasis on a "presumption" of truthfulness. After stating the existence of the presumption, he listed factors that could outweigh it. He concluded: "[I]f you find the presumption of truthfulness to be outweighed as to any witness you will give the testimony of that witness such credibility, if any, as you think it deserves." 748 F.2d at 926. In effect, the trial judge in Varner told the jury not to evaluate the credibility of a witness directly without first finding that the presumption of truthfulness was outweighed by the factors he enumerated. Further compounding the error, he did not instruct the jury to apply the presumption of truthfulness to the defendant. Instead, he instructed them to "give [the defendant's] testimony such credence and belief as you may think it deserves," apparently without the need to first overcome the presumption of truthfulness. Id. at 926-27.

12

The error in the instant case is not as egregious as that in Varner. The district judge did not speak in terms of a "presumption" that must be "outweighed" before a jury can evaluate directly the credibility of a witness. He used the term "assumption," but only after stating that "jurors . . . are the sole judges of the credibility of the witnesses and the weight their testimony deserves." He then elaborated at length on the jurors' responsibility to evaluate credibility, without mentioning assumption or presumption.[6] Finally, the instruction did not distinguish between the defendants and the government's witnesses.

The instruction in this case more closely resembles that in United States v. Safley: "Ordinarily, it is assumed that a witness will speak the truth, but this assumption may be dispelled . . . ." 408 F.2d 603, 605 (4th Cir.), cert. denied, 395 U.S. 983 (1969). The Safley court held that the "assumption" language was harmless error. It noted that the judge had instructed the jury properly that they were the sole judges of the facts, that they should consider carefully the credibility

_____

[6] The district court continued:

> You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider also any relation each witness might have to or be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by the other evidence in the case--contradicted by the evidence in the case. This applies to a defendant who takes the stand on his own behalf.
>
> Inconsistencies and discrepancies, even prior inconsistencies in statements in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. In weighing the effect of a discrepancy, always consider whether it is pertinent to the matter of importance or an unimportant detail, and whether or not intentional falsehood. Credibility is not merely choosing between one witness and another. As to each witness, you are free to reject all their testimony, accept all their testimony or as a third alternative reject some parts and accept some other parts of that testimony.

of accomplices, and that the government had the burden to prove the defendants' guilt beyond a reasonable doubt. Id.  The Safley defendants had failed to object to the instruction at trial, but the court nevertheless decided the case on the merits, concluding that the jury was "not likely to have been misled by the erroneous instruction concerning the assumption of a witness' truthfulness." Id. at 605-06. Similarly, in this case, the trial court used the "assumption" language only briefly, and did so during a lengthy description of the jury's autonomy in determining credibility. Thus it is not reasonably likely that the error "prejudice[d] the jury's consideration of the dispositive issue."

3.

The appellants contest what they describe as the court's "missing government evidence" instruction:

> The law does not require the prosecution to call as witnesses all who have been present at any time or place involved in this case, or who may appear to have some knowledge of the matters in issue in this trial. Nor does the law require the prosecution to produce all exhibits, all papers and things mentioned in the evidence.

The appellants argue that the quoted instruction unfairly favored the government, because it did not convey to "the jury that it was entitled to consider the government's failure to present any particular item of relevant evidence in determining whether the government had met its burden of proof." The appellants base their argument on model instructions indicating that, if the trial court tells the jury that the prosecution need not present all evidence, it also should state that the jury may consider that failure to produce evidence. See 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury Practice and Instructions § 17.18 (3d ed. 1977).

In fact, as pointed out by the government, the district court did instruct the jury that it could consider the failure of the prosecution to produce certain evidence. While discussing investigative techniques, it stated that,

14

> [f]or example, at some point fingerprints may not have been taken, or some other type of technique, or some certain leads might not have--not every possible lead pursued. You may consider these facts in deciding whether the government has met its burden of proof, because, as I told you, you should look at all of the evidence or lack of evidence in deciding whether the defendant is guilty. . . .
>
> Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, a defendant's guilt has been proven beyond a reasonable doubt.

The instruction on lack of evidence as an indication of innocence was not given in tandem with the instruction to which the appellants object, but it was given. If indeed there is an imbalance, it does not rise to the level of error. Nor does it create "a reasonable likelihood that the jury misconstrued the instruction." Craigo, 956 F.2d at 67.

4.

Finally, the appellants object to the instruction on circumstantial evidence:

> A defendant may be proved guilty by either direct or circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness; circumstantial evidence is proof of such facts or circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the defendant. The law makes no distinction between direct and circumstantial evidence; it requires only that the jury, after weighing all the evidence, must be convinced of the guilt of the defendant beyond a reasonable doubt.
>
> The necessity to resort to circumstantial evidence to prove guilt is readily apparent since, by the nature of things, crimes are generally committed in secret, beyond the range of eyewitnesses. Guilty knowledge may be inferred from the circumstances, even when there is a positive denial.

15

The appellants claim that the instruction implied both "that circumstantial evidence could operate only to prove guilt, not to establish innocence," and "that appellants were in fact guilty." They argue also that the instruction assumed a crime had been committed, leaving open only the issue of whether the appellants were the perpetrators, by defining circumstantial evidence as "proof of . . . facts or circumstances surrounding the commission of the crime."

a.

The court spoke three times in this instruction of using circumstantial evidence to prove guilt, but only once of using it to prove "guilt or innocence." Greater emphasis on use of evidence to prove guilt is objectionable, but it is not without basis since only the prosecution is required to prove anything. To a jury cognizant of the burden of proof, and of its choice between "guilty" and "not guilty" rather than "guilty" and "innocent," such emphasis does not alone seem reasonably likely to have prejudiced the jury's deliberations.

However, the second paragraph of the excerpt--involving the commission of crimes in secret--makes the issue more problematic. The appellants argue that the paragraph

> did not instruct the jury as to any principle of law, but instead offered a tactical rationale for the manner in which the government had elected to present its case. Such a statement might have been appropriate by the government in its closing argument, but had no proper place in the court's instructions to the jury.

We agree that the paragraph is imbalanced. As the appellants point out, it explained only why the prosecution needed to use circumstantial evidence. In effect, it invited the jury to give greater weight to circumstantial evidence offered by the prosecution than to circumstantial evidence offered by the defense, based solely on the debatable, nonlegal premise that "crimes are generally committed in secret." Even the government nearly admits that the paragraph was erroneous, acknowledging that "the trial court did include some extraneous information in this part of the charge." It responds only that the paragraph "did not taint the entire instruction."

16

The appellants cite <u>United States v. Dove</u>, in which the Second Circuit examined instructions on circumstantial evidence. 916 F.2d 41, 45-46 (2d Cir. 1990). The <u>Dove</u> court found error in the trial judge's use of a hypothetical in which the guilt of a defendant was assumed "and the jury [was] merely instructed how to look for evidence of that guilt." <u>Id.</u> at 46. The court held that the instruction was "unbalanced." <u>Id.</u> at 45. Because the defendant's theory of the case depended heavily on circumstantial evidence, the court concluded that the error warranted reversal of the defendant's conviction. <u>Id.</u> at 46-47.

The error in this case is more egregious than that in <u>Dove</u>. The <u>Dove</u> jury heard only "how" to find circumstantial evidence of guilt, and at least could infer that it could use the same method to find evidence of innocence. But the jury in the instant case was given a particular justification for the reliability of circumstantial evidence of guilt, a justification that did not apply at all to evidence of innocence. The question for this court, therefore, is whether there is a reasonable likelihood that the error prejudiced the jury's consideration of the appellants' guilt. As it did in <u>Dove</u>, that question turns on the role that circumstantial evidence played in the trial. Unlike <u>Dove</u>, in this case circumstantial evidence played only a minor role. As the appellants themselves admit in another context, "the government presented the testimony of dozens of purported eyewitnesses." Thus we find that, on the facts of this case, the error was harmless.

b.

The appellants' second argument regarding this instruction, that the judge's choice of words indicates an assumption that a crime has been committed, is without merit. The instruction's definition of circumstantial evidence--"facts or circumstances surrounding the commission of a crime"--implies such an assumption. But the trial court made very clear that each element of each count, including the fact that a crime occurred, must be proven beyond a reasonable doubt. Exemplary is the conspiracy instruction: "<u>If</u> you are satisfied that the conspiracy charged in the indictment existed, you must <u>next</u> ask yourself who the members are." We hold, therefore, that the instructions as a whole did not assume that a crime had been committed.

17

C. Sufficiency of Evidence

The appellants contend that the evidence was insufficient to support several of the charges. A conviction may be reversed for insufficiency of evidence only if, from the perspective most favorable to the government, Hamling v. United States, 418 U.S. 87, 124 (1974), the evidence was so insubstantial that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

1.

The appellants argue first that there was insufficient evidence to support Counts IX and XI, involving importation of heroin. The indictments state that, on two different occasions,"the defendants . . . did knowingly willfully and unlawfully import and attempt to import into the customs territory of the United States," quantities of heroin "in violation of 21 U.S.C. § 952(a)." In addition to section 952(a), both Counts cite 18 U.S.C. § 2, which governs aiding and abetting. The appellants contend that the indictments effectively charged them only with importation, not attempt to import, because neither of the statutes cited criminalizes attempt. The government's evidence, they assert, indicates that the heroin in question was seized by foreign authorities before it could be brought to the United States. Thus, they argue, there is no evidence in the record to support the first element of importation under 21 U.S.C. § 952(a)--that the substance actually was imported. United States v. Samad , 754 F.2d 1091, 1096 (4th Cir. 1984).

The government acknowledges that it did not prove actual importation. It points out, however, that the appellants' argument ignores both the language of the indictment and the charges that the government actually presented to the jury. The appellants properly were charged with attempt, it concludes, and there is sufficient evidence to support their convictions on those charges.

The government's argument is compelling. Where an indictment's text provides sufficient notice of a charge, failure to cite the appropriate statute does not render it ineffective:

18

> Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.

Fed. R. Crim. P. 7(c)(3). The counts in question both include the word "attempt." Attempt to import heroin is punishable under 21 U.S.C. § 963. The appellants do not contest the sufficiency of evidence of attempt to import. We affirm, therefore, the convictions under Counts IX and XI.

2.

Akas argues that there was insufficient evidence to support his conviction for money laundering. To support a conviction for money laundering, the government must prove that a defendant "knowingly conducted a financial transaction which involved the proceeds of drug distribution and that he did so either with the intent to promote his drug business or with knowledge that the transaction was designed to disguise the nature or source of those proceeds." United States v. Blackman, 904 F.2d 1250, 1256 (8th Cir. 1990); see also United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992), cert. denied 113 S. Ct. 1331 (1993). The prosecution alleged that Onwuazor and Akas used drug proceeds to purchase Nissan Pathfinders, which they shipped to Nigeria to pay suppliers. Akas acknowledges that the prosecution presented evidence that he knew the Pathfinders were bought with proceeds of illegal activity, but contends that the government failed to prove that he knew the sale was designed to conceal the illegal nature of the proceeds.

It is true that the government introduced no direct evidence that Akas knew the transactions' purpose, but direct evidence is not necessary. Prosecutors presented evidence that Akas knew the funds were drug proceeds, and that he knew the Pathfinders were shipped to overseas heroin suppliers. That evidence is sufficient for a rational jury to have found beyond a reasonable doubt that Akas knew the purpose of the transactions. Thus we affirm his conviction for money laundering.

19

3.

Anudu argues that there was insufficient evidence to convict him under Counts I, II, and VI.[7] Regarding Count I, which charged conspiracy to import heroin, he claims that the government presented no evidence of an agreement between Anudu and his alleged coconspirator, Onwuazor. The government's evidence was merely circumstantial, Anudu contends; he cites our holding in United States v. Guinta that

> circumstantial evidence that proves nothing more than association between two persons, even if one has a fixed intent known to the other to commit an unlawful act, is not sufficient to permit the inference of the requisite agreement between the two to act in concert to commit the act.

925 F.2d 758, 764 (4th Cir. 1991). In fact, the"circumstantial evidence" of which Anudu complains includes testimony and audio tapes of conversations indicating that he was involved in the planning of, and was to receive a kilogram of heroin from, an attempted importation from Singapore. That evidence is sufficient to support the jury's finding of an agreement to import.

Count II charged Anudu with conspiracy to distribute heroin. Anudu contends that the evidence showed no more than a buyer-seller relationship in which he was the buyer. In fact, the record contains evidence that Anudu's role was not so limited. One coconspirator described him as a partner in the operation with Onwuazor. If a rational trier of fact were to deem that testimony credible, it could find Anudu guilty of conspiracy to distribute heroin. Thus we affirm the conviction.

Count VI alleged that Anudu distributed heroin to Raymond Obilo on or about September 29, 1990. Anudu contends that the evidence supporting this charge was insufficient, because it consisted entirely of statements made by Onwuazor to Plummer, statements that Plum-

_____

[7] Anudu also challenges his conviction under Count IX. We address the appellants' joint challenge to Count IX in part II.C.1, supra, so we do not discuss Count IX separately here.

20

mer embellished to bolster their impact. It is not our role to determine Plummer's credibility. The jury believed his testimony, and Anudu's allegations do not convince us that a rational trier of fact could not have found the elements of this offense beyond a reasonable doubt.

D. Sentencing Guidelines

All of the appellants argue that they were not reasonably capable, individually or as a group, of producing the quantities of heroin attributed to each of them and to the conspiracy under the Sentencing Guidelines. The district court's application of the Guidelines to the facts is reversible only if clearly erroneous. 18 U.S.C. § 3742(e) (1988). Questions of law, however, are reviewed de novo. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

1.

The appellants contend that the district court erred in its assignment of Base Offense Levels under the Guidelines. The court found a level of thirty-six for Okoli, and thirty-eight for the remaining appellants. A defendant's Base Offense Level is determined not according to the quantity of drugs actually seized, but according to the amount "reasonably foreseeable" to the defendant within the scope of the conspiracy. United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993), cert. denied sub nom., Gonzalez v. United States, 114 S. Ct. 1086 (1994). The sentencing judge must make individualized findings, estimating the amount reasonably foreseeable to each coconspirator. USSG § 1B1.3 application note 2. The appellants argue that the district court both interpreted the Guidelines incorrectly and estimated inaccurately the amounts of drugs.

In their brief, the appellants assert that the trial court misinterpreted the Guidelines by automatically attributing liability for all drugs involved in the conspiracy to any defendant who performed three or more acts in furtherance of the conspiracy:

> The trial court interpreted the Commentary to mean that an individual who performs one, or possibly two, acts in connection with a drug conspiracy need not be held responsible

21

for all of the drugs involved in the entire conspiracy, but that anyone who does more than two acts is automatically responsible for all the drugs.

In fact, the district court does not appear to have applied such a bright-line rule. The judge's words indicate only the correct proposition that a person who engages in several activities in furtherance of a conspiracy is likely to foresee its scope:

> That guideline says that one time you can pick if that's all you've done. But it doesn't say you can pick and choose and pick and choose. As a matter of fact, you can't jump in and out of a conspiracy. . . . [Y]ou're going to be charged with everything it does and then <u>is it foreseeable that you can see</u> that all these drugs are coming in?

Because the trial judge was using the correct "reasonable foreseeability" standard, this court may reverse his application of the standard to the facts only if it is clearly erroneous. It is not clearly erroneous to infer from the extent of a defendant's activities that he reasonably foresaw the entire scope of the conspiracy.

A Base Offense Level of thirty-eight applies where the amount of heroin involved is between thirty and fifty kilograms. In their brief, the appellants offer amounts different than those calculated by the district court, but each individual's recalculation considers only the quantities actually accounted for in the transactions in which he participated. Nowhere do the appellants even suggest what this court must find to reverse--clear error in the trial court's finding that each could reasonably foresee an amount larger than that which he personally handled. The appellants also argue that the entire conspiracy involved less than thirty kilograms, even though the evidence at trial included statements by Onwuazor that he delivered more than fifty kilograms of heroin to buyers in Baltimore. The appellants contend that Onwuazor's statements were mere bragging: "He simply could not have done the things he claimed to have done." But we will not second-guess the credibility determinations of the trial judge. The district court did not clearly err in finding that the conspiracy included at least 30 kilograms of heroin.

22

2.

Okoli contends that he should have received a two-level downward adjustment for a minor role in the conspiracy, because he was only a courier. The presentencing report recommended such an adjustment. We have held previously that a mere courier is not automatically entitled to a downward adjustment. United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied 498 U.S. 846 (1990). The controlling factor is the individual's degree of involvement in the conspiracy, not the nature of his duties. A defendant has the burden to prove, by a preponderance of the evidence, that he is entitled to a downward adjustment. Id. Evidence at trial indicated that coconspirators relied heavily on Okoli as a courier. That evidence is sufficient to preclude a finding that the district court clearly erred.

3.

Anudu argues that the trial court erred in increasing his Base Offense Level by three levels. He received the adjustment for his role as a supervisor over Chuckwuma, Jeff Owunna, Emmanuel Bangura-Lee, and Yaw Osei. See USSG § 3B1.1. Anudu contends that he cannot be charged with a supervisory role in the Onwuazor conspiracy because his relationship with the alleged supervisees (1) was not that of a supervisor, and (2) constituted a conspiracy independent of the Onwuazor conspiracy. But there is evidence to the contrary. Owunna testified that Chuckwuma acted as a manager and courier for Anudu's drug business. That alone is sufficient to support the court's finding that Anudu was a supervisor. Owunna also testified that Anudu considered Onwuazor his business partner, indicating that the operations Anudu supervised were part of the Onwuazor conspiracy. Thus the court did not clearly err by including in that conspiracy Anudu's dealings with Chuckwuma, Owunna, Bangura-Lee, and Osei.

4.

Anudu also argues that he should have received a two-level downward adjustment of his Base Offense Level for accepting responsibility for his crimes. See USSG § 3E1.1. It is true that he acknowledged involvement in the heroin trade. However, as the government points out, he denied being involved with any of his codefendants, and thus

23

denied responsibility for the conspiracy charges. The district court did not clearly err, therefore, by denying him a downward adjustment for acceptance of responsibility.

E.

The appellants argue that there was a material variance between the indictment and the evidence at trial. They contend that the indictment charged an overall conspiracy but the proof at trial indicated multiple conspiracies. The parties disagree about the standard of review. The appellants urge us to reverse "if proof of multiple conspiracies prejudiced the substantial rights of the appellants, i.e., if the jury would have been confused into imputing guilt to members of one conspiracy because of the illegal activities of the members of another conspiracy." However, as we decided in Barsanti v. United States, we reach the issue of confusion between conspiracies only if we first find that the evidence, viewed in the light most favorable to the prosecution, cannot support the conclusion that there was a single conspiracy:

> The government bears the burden of proving the single conspiracy it charged in the indictment. On appeal, this court must determine whether the evidence, when viewed in the light most favorable to the government, supports the jury's finding of a single conspiracy. If the evidence shows that there was more than one conspiracy, we must reverse the verdict only where proof of the multiple conspiracies prejudiced substantial rights of appellants. A defendant's rights would be infringed if the jury would have been confused into imputing guilt to members of one conspiracy because of the illegal activities of the other conspiracy.

943 F.2d 428, 439 (4th Cir.), cert. denied, 112 S. Ct. 1474 (1991) (internal quotations and citations omitted); accord United States v. Urbanik, 801 F.2d 692, 695-96 (4th Cir. 1986) (holding that verdict can be overturned only if a reasonable fact-finder could not have found single conspiracy).

Even when there are several small, more tightly woven groups of coconspirators, the groups may be deemed a single conspiracy if they constitute "one general business venture." United States v. Leavis, 853

24

F.2d 215, 218 (4th Cir. 1988). The record contains ample evidence of interwoven business relationships among the appellants, such as Owunna's statement that Anudu and Onwuazor were partners. See supra part III.D.3. That evidence is sufficient to support the jury's finding of a single conspiracy.

F.

Finally, the appellants argue that the trial court repeatedly admitted testimony without requiring a foundation of personal knowledge, in violation of Fed. R. Evid. 602. Evidentiary rulings of the trial court are reversible only for abuse of discretion. Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 111 (4th Cir. 1993). The appellants cite only one example from the record--testimony by Special Agent Plummer about a conversation he had "with an individual named Koots." "Koots" told Plummer about an earlier conversation with Okoli and Onwuazombe. Because Plummer was relating the statements of others, the appellants contend, his testimony was not based on personal knowledge and thus violated Rule 602.

Rule 602 does not apply to the portions of Plummer's testimony that the appellants contest. "Koots" is a nickname for Akas, and was used so commonly that the government included it in his indictments. Thus both Koots's own statements and the words of Okoli and Onwuazombe that Koots repeated were statements of coconspirators. Rule 801(d)(2) deems statements of coconspirators to be nonhearsay, and the Advisory Committee Notes state that Rule 602 does not apply where Rule 801 applies, so Rule 602 does not apply to the evidence that appellants contest. United States v. Ammar , 714 F.2d 238, 254 (3rd Cir.), cert. denied sub nom., 464 U.S. 936 (1983). The district court properly admitted Koots's statements under Rule 801.

III.

The government failed to properly prove venue for Counts XII and XIII. Thus we vacate Onwuazor and Okoli's convictions and sentences on those charges. However, Onwuazor was convicted of eleven other counts, for each of which he received a prison term and a period of supervised release equal to or greater than those he received for Counts XII and XIII. All thirteen of his prison terms were to run con-

25

currently, as were all of his periods of supervised release. Similarly, Okoli was convicted of two other counts, and received for each a prison sentence equal to the term he received for Count XIII. His sentences, also, were to run concurrently. Finally, both Onwuazor and Okoli received a special assessment of fifty dollars for every count.

Because sentences for Counts XII and XIII run concurrently with terms of equal or greater length, we conclude that our vacation of those convictions and sentences does not necessitate reconsideration by the trial court of either appellant's overall sentence. Thus we remand only for vacation of the special assessments for Counts XII and XIII. Finding no other reversible error, we affirm on all remaining counts.

AFFIRMED IN PART AND VACATED IN PART